No. 23-70002

Iɴ ᴛʜᴇ
# United States Court of Appeals for the Fifth Circuit

DEXTER JOHNSON,

*Petitioner–Appellee*

v.

BOBBY LUMPKIN, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

*Respondent–Appellant.*

On Certified Interlocutory Appeal from the United States District Court
for the Southern District of Texas, Houston Division
Civil Action No. 4:19-cv-3047

## BRIEF OF RESPONDENT–APPELLANT

ANGELA COLMENERO
Provisional Attorney General of
Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

GWENDOLYN VINDELL*
Assistant Attorney General
State Bar No. 24088591
*Counsel of Record*

P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1400
gwendolyn.vindell2@oag.texas.gov

*Counsel for Respondent–Appellant*

## CERTIFICATE OF INTERESTED PERSONS

Under the fourth sentence of Fifth Circuit Rule 28.2.1., respondent, as a governmental party, need not furnish a certificate of interested persons.

s/ Gwendolyn S. Vindell
GWENDOLYN S. VINDELL
Assistant Attorney General

**STATEMENT REGARDING ORAL ARGUMENT**

This permissive interlocutory appeal implicates fundamental and dispositive questions of comity, finality of judgment, and the interests of justice which have not been authoritatively decided. In a series of preliminary, prima facie rulings beginning in 2017, this Court has permitted capital petitioners to take a second bite at the habeas apple under a judicially created exception to the general prohibition against successive petitions embodied in 28 U.S.C. § 2244(b). Believing itself bound by this Court's decisions in those threshold proceedings, the district court here granted significant evidentiary development before ultimately holding that it had jurisdiction over a successive intellectual disability claim raised more than seventeen years after *Atkins v. Virginia* was decided.

The district court also found that the claim was not barred by the one-year statute of limitations because the petitioner was entitled to equitable tolling based on a seasoned postconviction capital attorney's strategic decision about when to raise what he believed to be a futile claim under then-existing law. In so holding, the district court has justified a second extraordinary intrusion into a long-final conviction and

sentence and "needlessly prolong[ed] federal habeas proceedings." *Shinn v. Martinez Ramirez*, 142 S. Ct. 1718, 1739 (2022).

Because of the importance of these issues, and their complexity, the Director believes that oral argument would significantly aid the Court in analyzing them.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................... i

STATEMENT REGARDING ORAL ARGUMENT ................................... ii

TABLE OF CONTENTS .......................................................................... iv

TABLE OF AUTHORITIES .................................................................... vi

INTRODUCTION .................................................................................... 1

JURISDICTIONAL STATEMENT ......................................................... 1

ISSUES PRESENTED ............................................................................. 2

STATEMENT OF THE CASE ................................................................. 2

I.    Conviction and Initial Postconviction Proceedings ........................ 2

II.   Post-judgment and Last-minute Litigation .................................... 4

III.  Authorization Proceedings ............................................................ 6

IV.   Second Gateway Proceedings ......................................................... 9

SUMMARY OF THE ARGUMENT ....................................................... 15

STANDARD OF REVIEW ...................................................................... 17

ARGUMENT ........................................................................................... 18

I.    Courts Are Prohibited from Reading Extra-Statutory Exceptions
      into § 2244(b)(2)(A) ..................................................................... 18

      A.   The law on the second gateway successiveness inquiry. ...... 18

      B.   Under the plain text of the statute, Johnson's *Atkins* claim is
           successive. ........................................................................ 21

      C.   This Circuit reads an extra-statutory exception into
           § 2244(b)(2)(A). ................................................................ 27

D.   Courts are prohibited from judicially amending a statute. . 37

II.   An Attorney's Intentional, Strategic Decisions Can Never be Extraordinary Circumstances Warranting Equitable Tolling. ..... 45

III.   A Prima Facie Showing of Intellectual Disability Does Not Exempt a Petitioner from Diligently Pursuing his Rights. ........................ 54

CONCLUSION ....................................................................... 56

CERTIFICATE OF SERVICE ................................................. 58

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT .... 59

ELECTRONIC CASE FILING CERTIFICATIONS .............................. 60

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*Atkins v. Virginia*, 536 U.S. 304 (2002) ...................................................... 1

*Banister v. Davis*, 140 S. Ct. 1698 (2020) ......................................... 25, 39

*Bates v. United States*, 522 U.S. 23 (1997) ......................................... 29

*Black v. Davis*, 902 F.3d 541 (5th Cir. 2018) ......................................... 40

*Bowles v. Russell*, 551 U.S. 205 (2007) ......................................... 42

*Brumfield v. Cain*, 576 U.S. 305 (2015) ................................................... 23

*Busby v. Davis*, 925 F.3d 699 (5th Cir. 2019) ......................................... 56

*Christeson v. Roper*, 574 U.S. 373 (2015) ......................................... 47

*Clark v. Martinez*, 543 U.S. 371 (2005) .................................................. 36

*Coleman v. Johnson*, 184 F.3d 398 (5th Cir. 1999) ............................... 46

*Conn. Nat'l Bank v. Germain*, 503 U.S. 249 (1992) ......................... 31, 42

*Corley v. United States*, 566 U.S. 303 (2009) ......................................... 35

*Cousin v. Lensing*, 310 F.3d 843 (5th Cir. 2002) ............................. 47, 53

*Davis v. Mich. Dep't of Treasury*, 489 U.S. 803 (1989) ........................... 32

*Dodd v. United States*, 545 U.S. 353 (2005).............................. 26, 31, 43

*Doe v. Menefee*, 391 F.3d 147 (2d Cir. 2004) ......................................... 55

*Duncan v. Walker*, 533 U.S. 167 (2001) ................................................. 29

*Ex parte Briseno*, 135 S.W.3d 1 (Tex. Crim. App. 2004)........................... 4

*Ex parte Moore*, 548 S.W.3d 552 (Tex. Crim. App. 2018) ......................... 4

*Fierro v. Cockrell*, 294 F.3d 674 (5th Cir. 2002) ...................................... 46

*Fisher v. Johnson*, 174 F.3d 710 (5th Cir. 1999) .................................... 45

*Flores v. Quarterman*, 467 F.3d 484 (5th Cir. 2006) ........................ 46, 47

*Fulks v. Watson*, 4 F.4th 586 (7th Cir. 2021).........................................24

*Gray-Bey v. United States*, 209 F.3d 986 (7th Cir. 2000) ......................34

*Hall v. Florida*, 572 U.S. 701 (2014) .......................................... 23, 28, 33

*Hardemon v. Quarterman*, 516 F.3d 272 (5th Cir. 2008) .......................35

*Hardy v. Quarterman*, 577 F.3d 596 (5th Cir. 2009)....................... 46, 54

*Harrington v. Richter*, 562 U.S. 86 (2011) ..............................................49

*Harris v. Hutchinson*, 209 F.3d 325 (4th Cir. 2000)...............................47

*Henderson v. Thaler*, 626 F.3d 773 (5th Cir. 2010) ...............................55

*Hernandez v. Results Staffing, Inc.*, 907 F.3d 354 (5th Cir. 2018).........17

*Hibbs v. Winn*, 542 U.S. 88 (2004) .........................................................36

*Holland v. Florida*, 560 U.S. 631 (2010)...................................... *passim*

*In re (Michael) Johnson*, 322 F.3d 881 (5th Cir. 2003)...........................40

*In re Bower*, 612 F. App'x 748 (5th Cir. 2015) .......................................43

*In re Bowles*, 935 F.3d 1210 (11th Cir. 2019) ............................... *passim*

*In re Cathey*, 857 F.3d 221 (5th Cir. 2017) ................................... *passim*

*In re Edwards*, 865 F.3d 197 (5th Cir. 2017).........................................35

*In re Graham*, 61 F.4th 433 (4th Cir. 2023) ...........................................34

*In re Halprin*, 788 F. App'x 941 (5th Cir. 2019) .............................. 10, 29

*In re Lewis*, 484 F.3d 793 (5th Cir. 2007) ..............................................55

*In re Magwood*, 113 F.3d 1544 (11th Cir. 1997)....................................44

*In re Milam*, 838 F. App'x 796 (5th Cir. 2020)..........................................10

*In re Morris*, 328 F.3d 739 (5th Cir. 2003)...............................................38

*In re Payne*, 722 F. App'x 534 (6th Cir. 2018).........................................24

*In re Richardson*, 802 F. App'x 750 (4th Cir. 2020)...............................23

*In re Soliz*, 938 F.3d 200 (5th Cir. 2019)..................................................27

*In re Sparks*, 939 F.3d 630 (5th Cir. 2019) .............................................25

*In re Swearingen*, 556 F.3d 344 (5th Cir. 2009) .............................. 19, 40

*In re Webster*, 605 F.3d 256 (5th Cir. 2010) .....................................26, 29

*In re Wilson*, 442 F.3d 872 (5th Cir. 2006).......................................47, 54

*In re Wood*, 648 F. App'x 388 (5th Cir. 2016) ..................................11, 36

*Jackson v. Davis*, 933 F.3d 408 (5th Cir. 2019) ...............................45, 46

*Johnston v. Mitchell*, 871 F.3d 52 (1st Cir. 2017).................................50

*Jones v. Barnes*, 463 U.S. 745, 751–52 (1983). ....................................51

*Jordan v. Sec'y, Dep't of Corr.*, 485 F.3d 1351 (11th Cir. 2007) ....... 40, 41

*King v. St. Vincent's Hosp.*, 502 U.S. 215 (1991) ..................................34

*Knowles v. Mirzayance*, 556 U.S. 111 (2009) .......................................50

*Kreutzer v. Bowersox*, 231 F.3d 460 (8th Cir. 2000) .............................47

*Lawrence v. Florida*, 549 U.S. 327 (2007)..............................................47

*Lowe v. Knipp*, No. 07cv2232-LAB (CAB), 2013 WL 4525401 (S.D. Cal.
    Aug. 2, 2013) ......................................................................53

*Mabbs v. Gipson*, No. 2:13-cv-0550-JAM-GGH, 2014 WL 4098501 (E.D.
    Cal. Aug. 18, 2014)...............................................................53

*Manning v. Epps*, 688 F.3d 177 (5th Cir. 2012) ....................................54

*Maples v. Thomas*, 565 U.S. 266 (2012) ............................................. 46, 51

*Martinez v. Martinez*, No. SACV 10-540 DOC(CW), 2011 WL 672557
   (C.D. Cal. Jan. 4, 2011) ......................................................................... 52

*Martinez v. Mukasey*, 519 F.3d 532 (5th Cir. 2008) ........................ 30, 31

*Martinez v. Ryan*, 566 U.S. 1 (2012) ................................................... 43, 48

*Mathis v. Thaler*, 616 F.3d 461 (5th Cir. 2010) ............................ 7, 19, 22

*McQuiggin v. Perkins*, 569 U.S. 383 (2013) ............................................. 42

*Moody v. Lumpkin*, 70 F.4th 884 (5th Cir. 2023) ............................. 44, 48

*Moore v. Dretke*, 369 F.3d 844 (5th Cir. 2004) ....................................... 20

*Moore v. Texas*, 139 S. Ct. 666 (2019) .................................................. 4, 5

*Moore v. Texas*, 581 U.S. 1 (2017) ...................................................... 4, 33

*Overdam v. Tex. A&M Univ.*, 43 F.4th 522 (5th Cir. 2022) ................... 17

*Pace v. DiGuglielmo*, 544 U.S. 408 (2005) ........................................ 45, 46

*Reyes-Requena v. United States*, 243 F.3d 893 (5th Cir. 2001) ........ 38, 39

*Sandvik v. United States*, 177 F.3d 1269 (11th Cir. 1999) .................... 47

*Shinn v. Martinez Ramirez*, 142 S. Ct. 1718 (2022) ......................... 41, 42

*Shoop v. Hill*, 139 S. Ct. 504 (2019) ....................................................... 23

*Smith v. Murray*, 477 U.S. 527 (1986) ........................................ 50, 51, 53

*Smith v. Robbins*, 528 U.S. 259 (2000) .................................................. 50

*Strickland v. Washington*, 466 U.S. 668 (1986) ................... 49, 51, 52, 53

*Taliani v. Chrans*, 189 F.3d 597 (7th Cir. 1999) ................................... 47

*Tyler v. Cain*, 533 U.S. 656 (2001) ................................................. *passim*

*United States v. Fulton*, 780 F.3d 683 (5th Cir. 2015) ........................... 44

*United States v. Marcello*, 212 F.3d 1005 (7th Cir. 2000) ..................... 47

*United States v. Riggs*, 314 F.3d 796 (5th Cir. 2002) ............................ 48

*Weathers v. Davis*, 915 F.3d 1025 (5th Cir. 2019) ................................. 25

*Williams v. Kelley*, 858 F.3d 464 (8th Cir. 2017) .................................. 24

**Statutes**

28 U.S.C. § 1292(b) ............................................................ 2, 14, 17

28 U.S.C. § 2244(b) ......................................................... *passim*

28 U.S.C. § 2244(b)(1) ............................................................... 39

28 U.S.C. § 2244(b)(2) .......................................... 19, 38, 39, 44

28 U.S.C. § 2244(b)(2)(b)(ii) ............................................. 19, 26

28 U.S.C. § 2244(b)(2)(A) ................................................. *passim*

28 U.S.C. § 2244(b)(2)(B) ......................................................... 19

28 U.S.C. § 2244(b)(3) ............................................................. 18

28 U.S.C. § 2244(b)(3)(C) ........................................................ 19

28 U.S.C. § 2244(b)(3)(D) ........................................................ 40

28 U.S.C. § 2244(b)(3)(E), app ........................................ 37, 40

28 U.S.C. § 2244(d) .................................................................. 47

28 U.S.C. § 2244(d)(1) .............................................................. 47

28 U.S.C. § 2254(d) ........................................................... 23, 25

28 U.S.C. § 2254(e)(1) .............................................................. 55

28 U.S.C. § 2254(e)(2) .............................................................. 41

28 U.S.C. §§ 2244(b)(4), 2254 ........................................... 2, 38

28 U.S.C. § 2255(h)(2) ............................................................. 24

Tex. Code Crim. Proc. art. 11.071 § 5(a)(3) ............................ 55

# INTRODUCTION

Dexter Johnson is a death-sentenced Texas state inmate seeking federal habeas relief in the court below. Johnson's August 2019 execution was stayed when he received authorization from this Court to file a successive federal petition raising a claim under *Atkins v. Virginia*, 536 U.S. 304 (2002). *In re Johnson*, 935 F.3d 284, 287 (5th Cir. 2019). Johnson filed that successive petition in the lower court in November 2019. After an evidentiary hearing, the district court held that Johnson's petition was neither successive nor untimely. ROA.1070. On the former, the district court followed this Court's non-appealable, tentative prima facie rulings recognizing a judicially created exception—namely, a futility exception—to 28 U.S.C. § 2244(b)(2)(A). On the latter, the court found Johnson's petition was timely under novel interpretations of equitable tolling principles, i.e., that 1) an attorney's strategic decisions about when to raise a claim constitute extraordinary circumstances, and 2) a petitioner's prima facie showing of intellectual disability obviates the diligence requirement. Each of these errors requires reversal.

# JURISDICTIONAL STATEMENT

This appeal arises from an interlocutory order entered by the district court on October 28, 2022. The district court had jurisdiction

under 28 U.S.C. §§ 2244(b)(4), 2254. This Court has jurisdiction pursuant to 28 U.S.C. § 1292(b).

## ISSUES PRESENTED

1.    Whether there can be judicially created exceptions to the general prohibition against second or successive petitions found in 28 U.S.C. § 2244(b)(2)(A)?

2.    Whether an attorney's intentional, strategic decisions to not raise a claim he deemed meritless can ever constitute extraordinary circumstances sufficient for equitable tolling?

3.    Whether a prima facie showing of intellectual disability exempts a petitioner from the diligence requirement of equitable tolling?

## STATEMENT OF THE CASE

## I.    Conviction and Initial Postconviction Proceedings

Johnson was convicted and sentenced to death for the 2006 rape, kidnapping, and murder of Maria Aparece. *Johnson v. State*, No. AP-75,749, 2010 WL 359018, at *1 (Tex. Crim. App. Jan. 27, 2010); *see also* ROA.464. At trial, Johnson was determined not to be intellectually disabled. *See* ROA.464 & n.2 (defense expert determined Johnson's IQ

2

was between 74 and 88 and Johnson did not have obvious deficits in adaptive behavior). His conviction and sentence were affirmed on direct appeal. *Johnson*, 2010 WL 359018, at *1. The Court of Criminal Appeals (CCA) also denied state habeas relief. *Ex parte Johnson*, No. WR-73,600-01, 2010 WL 2617804, at *1 (Tex. Crim. App. June 30, 2010).

Johnson then filed his first federal habeas petition in June 2011. *See* ROA.465. While Johnson's initial petition was pending, the American Psychiatric Association issued the Fifth Edition of the Diagnostic and Statistical Manual (DSM-V). *See* ROA.467. The DSM-V "significantly altered the manner in which clinicians view the relationship between IQ scores and intellectual disability." ROA.467. Johnson did not raise an *Atkins* claim then or at any time "during the pendency of Johnson's initial petition." ROA.467.

On August 13, 2013—three months after the publication of the DSM-V—the district court denied all but one of Johnson's habeas claims. ROA.469. The court then denied Johnson's remaining claim on June 25, 2014 and entered final judgment. ROA.470. Johnson unsuccessfully appealed the lower court's denials of relief. *Johnson v. Stephens*, 617 F. App'x 293 (5th Cir. 2015).

## II.    Post-judgment and Last-minute Litigation

In March 2017, the Supreme Court decided *Moore v. Texas*, 581 U.S. 1 (2017) (*Moore I*), reversing the CCA's reliance on the factors enumerated in *Ex parte Briseno*, 135 S.W.3d 1 (Tex. Crim. App. 2004). This reversal did not prompt Johnson to raise an *Atkins* claim in state or federal court. Instead, in June 2017, Johnson returned to federal district court to pursue a "novel avenue[] of relief." *See* ROA.470, 486. "Johnson specifically asked to reopen the judgment because the Court had allegedly been incorrect in denying leave to amend" the petition with new ineffective-assistance claims. ROA.470. The court denied Johnson's motion for a new trial, and Johnson unsuccessfully appealed that as well. *Johnson v. Davis*, 746 F. App'x 375 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 1375 (2019).

In June 2018—while the appeal of the district court's denial of the motion for a new trial remained pending—the CCA issued its post-vacatur decision in *Ex parte Moore*, 548 S.W.3d 552 (Tex. Crim. App. 2018). This decision was also overturned by the Supreme Court in *Moore v. Texas*, 139 S. Ct. 666, 672 (2019) (*Moore II*), in February 2019.

On December 6, 2018—shortly before the Supreme Court decided *Moore II*—Johnson's execution date was set for May 2, 2019. ROA.470. Not long after, Johnson, acting *pro se*, moved for the appointment of new counsel, i.e., the Northern District of Texas Capital Habeas Unit (CHU). ROA.471. The CHU was appointed as co-counsel with the specific duty to identify potentially meritorious ineffective-assistance claims. ROA.471. Up until that point, long-time capital postconviction defense attorney Patrick McCann had represented Johnson in all state and federal habeas proceedings.

Instead of complying with the duties outlined by the district court, however, the CHU sought to terminate McCann's representation of Johnson. ROA.472. Meanwhile, McCann had been investigating an *Atkins* claim, including securing a mental health expert who opined that Johnson was intellectually disabled, and he ultimately filed a subsequent state habeas application raising an *Atkins* claim. *Ex parte Johnson*, No. WR-73,600-02, 2019 WL 1915204, at *1 (Tex. Crim. App. Apr. 29, 2019). That application was dismissed by the CCA as abusive. *Id*. The district court nonetheless stayed Johnson's execution. ROA.472. McCann then withdrew from Johnson's case. ROA.472.

Johnson was again scheduled to be executed on August 15, 2019. ROA.472. Johnson, now represented solely by the CHU, filed a motion for relief from judgment, premised primarily on McCann's representation as both state and federal habeas counsel. ROA.473. The court denied Johnson's post-judgment motion, ROA.473, and this Court affirmed, *Johnson*, 935 F.3d at 287.

## III. Authorization Proceedings

When he appealed the denial of the post-judgment motion, Johnson also sought authorization from this Court to file a successive *Atkins* claim under 28 U.S.C. § 2244(b)(2)(A). *Johnson*, 935 F.3d at 287. To obtain authorization under that provision, Johnson needed to show that his *Atkins* claim "relie[d] on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable[.]" § 2244(b)(2)(A). Of course, *Atkins* was, as this Court recognized, "decided long before Johnson even committed his crimes." *Johnson*, 935 F.3d at 292.

But two years prior to Johnson seeking authorization, this Court had decided *Cathey*, a case in which another capital habeas petitioner sought authorization to raise a successive *Atkins* claim. *In re Cathey*, 857

6

F.3d 221, 223 (5th Cir. 2017). In that case, the petitioner did not include an *Atkins* claim in his first federal habeas petition even though *Atkins* was decided two years before he initiated federal habeas proceedings. *Id.* Cathey nonetheless argued that *Atkins* was "previously unavailable" in part because his did not have a viable claim of intellectual disability until the Flynn Effect[1] became widely used in 2005. *Id.* at 227–32. This Court agreed, holding that "[a]t th[at] preliminary stage," Cathey had presented "sufficiently 'cogent argument[s]' that *Atkins* was previously unavailable at the time of his first petition and its disposition." *Id.* at 230 (quoting *Mathis v. Thaler*, 616 F.3d 461, 473 (5th Cir. 2010)). The Court thus allowed Cathey to pass through the first gateway. *Id.* at 241.

What *Cathey* "precedentially determined" then is "that it is correct to equate legal availability with changes in the standards for psychiatric evaluation of the key intellectual disability factual issues raised by *Atkins*." *Johnson*, 935 F.3d at 294. Indeed, the *Cathey* decision "open[]ed

---

[1] "The Flynn Effect 'is a phenomenon positing that, over time, standardized IQ test scores tend to increase with the age of the test without a corresponding increase in actual intelligence in the general population. Those who follow the Flynn Effect adjust for it by deducting from the IQ score a specified amount for each year since the test was normalized.'" *Cathey*, 857 F.3d at 227.

the door for Johnson," *id*., who sought authorization to file a successive *Atkins* claim under the auspice of the DSM-V, a manual published to provide clinicians with diagnostic guidance. *Id*. at 293. The DSM-V, "which changed the focus from specific IQ scores to clinical judgment," was published in 2013 while Johnson's initial federal habeas proceedings were still pending. *Id*. Bound by *Cathey*, the Court authorized Johnson to file his successive *Atkins* claim because, like Cathey, Johnson was "presented . . . with reasons that an *Atkins* claim is possibly meritorious when it had not previously been." *Id*. at 294. In so holding, the Court acknowledged that *Cathey* "did not separately analyze whether it was enough that *Atkins* in a generic sense" met the successiveness statute "even though it was not so clearly retroactive in its application to Cathey." *Id*. at 293. But the Court accepted that *Cathey* "necessarily decided that latter point as well and move[d] on." *Id*. The Court concluded, "counterintuitively perhaps," that *Atkins* was retroactive to Johnson as well. *Id*. at 292. The Court thus stayed Johnson's August 2019 execution. *Id*. at 296.

8

## IV.  Second Gateway Proceedings

Johnson filed his successive petition raising an *Atkins* claim shortly thereafter. ROA.11–62, 475. The Director moved to dismiss the petition as successive and untimely. ROA.370–419. The lower court denied the Director's motion without prejudice and granted Johnson's request for an evidentiary hearing. ROA.463, 487. The Director moved the lower court to reconsider its order, but the lower court denied the motion. ROA.497–537, 605–08. The court held the hearing, and McCann was the sole witness to testify. ROA.1184. Thereafter, the parties submitted post-hearing briefing, including the Director's renewed motion to dismiss and two supplemental briefs. *See* ROA.865–933, 942–48, 1019–25.

On October 28, 2022, the lower court denied the Director's renewed motion to dismiss, finding Johnson's petition neither successive nor untimely. ROA.1070. As to successiveness, the district court applied this Court's "judicially created" "*futility* exception" to § 2244(b)(2)(A). ROA.1052 & n.10. Under that exception, "both the 'significant changes in medical methodology for evaluating relevant disabilities' and the 'courts' recognition of those changes' may make a claim available for the first

time." ROA.1053 (quoting *In re Milam*, 838 F. App'x 796, 799 (5th Cir. 2020)) (citing *In re Halprin*, 788 F. App'x 941, 944 (5th Cir. 2019)).

The district court held that "because earlier psychological standards made *Atkins* relief inapplicable to Johnson, raising an *Atkins* claim would have been futile until the DSM-V issued" in 2013. ROA.1053. The court determined that an *Atkins* claim was thus "previously unavailable," § 2244(b)(2)(A), to Johnson until then. ROA.1054.

But in 2013, Johnson was still litigating his first federal habeas petition. ROA.1054. The lower court then turned to a "feasibility" analysis—supposedly derived from the "previously unavailable" statutory text into which the court read a "futility" exception—to determine whether "it would have been *feasible* for Johnson to litigate an *Atkins* claim during his on-going federal action." ROA.1054. The court concluded it would not have been feasible to amend his petition with an *Atkins* claim because the court had denied Johnson's latter-day attempt to raise other, unrelated claims around the same time the DSM-V was published. ROA.1055–56. Thus, the court determined the *Atkins* claim

was unavailable. ROA.1056.[2] In turn, the court concluded that Johnson's *Atkins* claim was not successive. ROA.1057.

As to timeliness, the district court appeared to assume Johnson would benefit from a later factual predicate date but did not explicitly state what the accrual date was. *See* ROA.1057 & n.14 (noting this Court had "not yet decided whether to measure an inmate's compliance with the limitations period from the publication of the [DSM-V] or from *Moore I*," but noting "[u]nder any scenario, [Johnson] filed his petition late"). The court instead proceeded directly to whether Johnson was entitled to equitable tolling.

---

[2]     The lower court then discussed—but did not decide—yet another "extra-statutory exception" to § 2244(b)(2)(A): whether petitioner's counsel's "representation in the initial federal proceedings was so deficient as to render the *Atkins* claim functionally unavailable." ROA.1056–57 (quoting *In re Wood*, 648 F. App'x 388, 392 (5th Cir. 2016)). The lower court found it wasn't necessary to consider McCann's representation of Johnson within the context of the successiveness inquiry because it would have been futile to raise the claim before the publication of the DSM-V and it wasn't feasible to add the claim after. ROA.1056. The court noted, however, that its discussion about McCann's representation in the timeliness analysis would "appl[y] with full force to Mr. McCann's representation immediately after the DSM-V issued." *Id.* at 1057. Similarly, the Director's argument that the courts cannot read judicially created exceptions to § 2244(b)(2)(A) applies with equal force to any such ineffective-assistance-of-federal-habeas-counsel exception. *See infra* Argument I.D.

In that analysis, the district court found that McCann testified credibly at the evidentiary hearing that he "made choices based on his own assessment of the law and Johnson's own circumstances." ROA.1059. The court found McCann had "a rich understanding of *Atkins* law and mental-health issues in capital cases," and he had undoubtedly "kept abreast of changes in both the psychological understanding of intellectual disability and the legal responses to those changes." ROA.1060. McCann used that knowledge and expertise "to pursue *Atkins* relief in other cases," and in fact, McCann successfully litigated Bobby Moore's case in the Supreme Court. ROA.1059.[3] But while "McCann never ceased litigating on Johnson's behalf," he "just did not litigate an *Atkins* claim until the eve of any execution date." ROA.1059. He chose not to do so because: 1) he prioritized other claims "for which he had received a Certificate of Appealability" instead; and 2) he adjudged that the specific facts of Johnson's intellectual disability claim would be

---

[3]    McCann was the lead attorney who handled Bobby Moore's state habeas hearing in January 2014—the same hearing that resulted in the state trial court finding Moore was *not* intellectually disabled. ROA.1286. McCann also assisted in the Supreme Court briefing that led to *Moore II*. ROA.1287.

unsuccessful under Texas law,[4] despite the DSM-V and *Moore I* opinion, and he believed receiving a negative adjudication in state court would have been "possibly fatal to any hope of federal relief." ROA.1061–62, 1064.

The district court ultimately found that McCann's representation of Johnson "amounts to an extraordinary circumstance that warrants equitable tolling in this case." ROA.1067. The district court never explicitly found that McCann was neglectful, ineffective, or committed gross misconduct. Rather, the court acknowledged McCann made strategic decisions, but it held that McCann's strategic decisions resulted in him withholding a potentially meritorious claim from federal habeas review and failing to litigate as zealously for Johnson as he did for other inmates. ROA.1061–67, 1068–69. In other words, the court held that, as a matter of law, capital attorneys may *never* "withhold viable claims when an avenue of federal relief exits." ROA.1061; ROA.1062 ("Federal

---

[4]     Specifically, McCann testified at the evidentiary hearing that the testimony from the co-defendants at Johnson's trial showed that Johnson "was more or less in charge, which show[ed] leadership," "[t]hat he hid the vehicle[,] and that he was also the shooter." ROA.1320. McCann testified that these were all factors that would have made Johnson's intellectual disability claim a difficult one to sustain under the now-overturned *Briseno* factors. ROA.1297, 1320.

review cannot countenance any decision—however strategic it may seem—formed with the intent of withholding potentially viable claims from an initial federal habeas petition."); ROA.1069 ("When weighing the various factors which play into litigation strategy, an attorney bears an overarching ethical duty to leave no potentially meritorious claim aside, to preserve a client's right to raise any claim which may provide relief.").

The district court also found that petitioners who have made prima facie showings of intellectual disability have no burden to meet the diligence requirements of the equitable tolling standard. ROA.1067–68. The court thus concluded that Johnson's petition was not barred by the one-year statute of limitations. ROA.1070.

The Director then moved the lower court to certify its October 28 Order for interlocutory appeal. ROA.1076–97. On January 12, 2023, the lower court granted the Director's motion, certifying the first of the three controlling questions of law described above, *see supra* Issues Presented, for appeal. ROA.1121–23.

The Director timely filed a petition for permission to appeal the district court's October 28 Order under § 1292(b) on January 23, 2023. *See* Pet. Permission Appeal Oct. 28, 2022 Order Under 28 U.S.C.

§ 1292(b), *Johnson v. Lumpkin*, No. 23-90003 (5th Cir. May 31, 2023) (Pet. Interlocutory Appeal). This Court granted the Director's petition on May 31, 2023. ROA.1124. This appeal follows.

## SUMMARY OF THE ARGUMENT

**I.**   Under a plain reading of the text of 28 U.S.C. § 2244(b)(2)(A), Johnson's *Atkins* claim is successive: *Atkins* was not new in 2011 when he filed his initial federal petition, it was not made retroactive to him because he committed his crimes after it was decided, and it was available to raise during his first federal habeas proceedings. To avoid this harsh result, this Court in prima facie proceedings, and the district court on second gateway review, have read a judicially created equitable exception into the statute. This so-called "futility exception" permits petitioners to raise long-available *Atkins* claims if their claim became meritorious in the interim by virtue of something *other than* "a new rule of constitutional law made retroactive . . . by the Supreme Court." § 2244(b)(2)(A). But to read that judicially created exception into the statute, the courts must judicially amend it; they must add words that aren't there and ignore words that are. As the Supreme Court and this Court have long held, courts are prohibited from judicially amending a

statute in that manner. The district court thus erred both in following this Court's nonappealable prima facie rulings and relying on an extra-statutory equitable exception to find Johnson's claim not successive.

**II.**    Even if the district court's jurisdictional decision is correct, its equitable tolling decision is wrong. The district court determined that Johnson showed the type of extraordinary circumstances necessary for such tolling because his initial federal habeas counsel refused to raise what he deemed to be a meritless *Atkins* claim before 2019. But Johnson's initial federal habeas counsel had decades of experience in the state courts in general and years of experience in intellectual disability issues in specific, and he reasonably relied on that experience to decide that it would have been futile to raise Johnson's *Atkins* claim sooner. If there is an ineffective-assistance-of-federal-habeas-counsel exception to the statute of limitations—and there is not—then certainly the district court's mere disagreement with Johnson's counsel's appraisal of the chances of success isn't enough to suggest ineffectiveness. In short, intentional strategic decisions made by learned counsel are run-of-the-mill, not extraordinary, and should never constitute extraordinary circumstances.

**III**.    The district court also wrongly decided that petitioners who have made a prima facie showing of intellectual disability—despite state court findings to the contrary—are exempt from the usual diligence required to establish equitable tolling. Even if Johnson's counsel had neglected or abandoned him, Johnson would still be required to show diligence. And this Court has already held that intellectual disability claims are not exempt from the statute of limitations. The district court's holding is an end-run around that decision and should be reversed.

## STANDARD OF REVIEW

Under § 1292(b), this Court reviews de novo any controlling legal questions raised by a district court's certified order. *Overdam v. Tex. A&M Univ.*, 43 F.4th 522, 526 (5th Cir. 2022). The Court's "jurisdiction 'is not confined to the precise question[s] certified by the lower court,' but is 'nonetheless confined to the particular order[s] appealed from.'" *Id.* (alterations in original) (quoting *Hernandez v. Results Staffing, Inc.*, 907 F.3d 354, 363 (5th Cir. 2018)).

## ARGUMENT

### I.   Courts Are Prohibited from Reading Extra-Statutory Exceptions into § 2244(b)(2)(A).

Under the plain language of § 2244(b)(2)(A), there is no question that Johnson's *Atkins* claim is successive. The district court, however, rejected the notion that it was bound by the plain text of the statute, choosing instead to follow this Court's nonappealable determinations in the prima facie context. *See generally* ROA.1049–54. In those prima facie proceedings, this Court ruled that § 2244(b)(2)(A) is subject to what the district court appropriately characterized as an extra-statutory, judicially-created exception. *See* ROA.1052 n.10 (acknowledging "the Fifth Circuit cases which have recognized [a] *judicially created exception*" to that subsection (emphasis added)). The district court believed itself bound by this so-called "*futility* exception," *see* ROA.1052, and ultimately found Johnson's *Atkins* claim not successive using it, ROA.1057. The district court was wrong to do so, and this Court should reverse.

### A.   The law on the second gateway successiveness inquiry.

A petitioner seeking to file a successive petition must be granted permission to do so by a circuit court. 28 U.S.C. § 2244(b)(3). A circuit court may authorize the filing of a successive petition if it determines

that the petitioner makes a prima facie showing that his claim satisfies the requirements of § 2244(b). *See* § 2244(b)(3)(C). This Court determined that Johnson made this showing in 2019 and authorized the filing of his successive *Atkins* claim. *Johnson*, 935 F.3d at 294–95.

The district court's task was to then conclusively determine whether Johnson's petition meets the requirements of § 2244(b); if it does not, the court "must dismiss the motion that [this Court] allowed the applicant to file." *See In re Swearingen*, 556 F.3d 344, 349 (5th Cir. 2009) (the district court "must independently determine whether the petition *actually satisfies* the stringent § 2244(b)(2) requirements").

In this context, Johnson bears the burden of showing he conclusively meets the requirements of § 2244(b)(2)(A), the new-constitutional-rule provision of § 2244(b) under which he proceeds.[5] *See Mathis*, 616 F.3d at 467 (holding that petitioner "bears the burden of

---

[5]    Johnson does not, and cannot, proceed under § 2244(b)(2)(B) because an *Atkins* claim relates only to eligibility for the death penalty, not actual innocence of the underlying offense. *See* § 2244(b)(2)(b)(ii) (the facts underlying the claim "would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense"); *see Cathey*, 857 F.3d at 233 n.76 ("Cathey does not—and cannot—allege that the IQ scores establish that he is not guilty of capital murder. The argument that 'eligibility' for capital punishment ought not be governed by the rules on successive writs, though not without purchase, appears to be foreclosed.").

demonstrating that his successive federal habeas application falls within one of the two exceptions and thus should not be dismissed"); *Moore v. Dretke*, 369 F.3d 844, 845 n.1 (5th Cir. 2004) (finding as "insufficient" a district court's determination that petitioner's petition "appear[ed]" to satisfy the requirements of § 2244(b) and noting that the "correct standard" is that the "applicant bears the burden of demonstrating that the petition does in fact comply with the statute").

This requires him to show: "First, the rule on which the claim relies must be a 'new rule' of constitutional law; second, the rule must have been 'made retroactive to cases on collateral review by the Supreme Court'; and third, the claim must have been 'previously unavailable.'" *Tyler v. Cain*, 533 U.S. 656, 662 (2001) (interpreting the second prerequisite).

"Quite significantly, under this provision, the Supreme Court is the *only* entity that can 'ma[k]e' a new rule retroactive. The new rule becomes retroactive, not by the decisions of the lower court or by the combined action of the Supreme Court and the lower courts, but simply by the action of the Supreme Court." *Id.* at 663 (emphasis added). Thus, "a new rule is not 'made retroactive to cases on collateral review' unless the

20

Supreme Court holds it to be retroactive." *Id*. ("Based on the plain meaning of the text read as a whole," "'made' means 'held' and, thus, the requirement is satisfied only if this Court has held that the new rule is retroactively applicable to cases on collateral review"). If a petitioner does not show that the Supreme Court "*already* ha[s] made" a rule retroactive, "the District Court [is] required to dismiss" his petition. *Id*. at 667 (emphasis added).

### B. Under the plain text of the statute, Johnson's *Atkins* claim is successive.

Johnson's claim "relies on" the rule exempting intellectually disabled petitioners from the death penalty created by *Atkins. Atkins* is, as a general matter, a new rule of constitutional law made retroactive to cases on collateral review. *See* ROA.1051; *Johnson*, 935 F.3d at 292; *Cathey*, 857 F.3d at 227. The problem for Johnson is that *Atkins* was decided on June 20, 2002, which was four years before he "even committed his crimes," *Johnson*, 935 F.3d at 292, and nine years before he filed his initial federal petition, *see* ROA.1043.

It cannot be credibly argued that, by the time Johnson filed his initial petition, *Atkins* was "new." *See* § 2244(b)(2)(A); *Tyler*, 533 U.S. at 662 ("[T]he rule on which the claim relies must be a 'new rule' of

constitutional law."); *see also In re Bowles*, 935 F.3d 1210, 1216 (11th Cir. 2019) (noting that, since *Atkins* was decided six years before Bowles filed his first federal petition, Bowles "cannot now rely on *Atkins* as a 'new' rule of constitutional law"). Nor can it be plausibly argued that *Atkins* was "previously unavailable" to him during his initial federal proceedings. *See Mathis*, 616 F.3d at 473 (holding an *Atkins* claim successive where petitioner "offer[ed] no cogent argument to excuse his failure to include his *Atkins* claim in his first federal petition when that claim was available to him for nine months after *Atkins* was decided"); *In re Bowles*, 935 F.3d at 1215 ("That means [*Atkins*] was not 'previously unavailable' to him because he could have included it in his original habeas petition.").

Accordingly, under a plain interpretation of § 2244(b)(2)(A), Johnson's intellectual disability claim fails *several* parts of the statute: *Atkins* isn't a new rule, it wasn't "made retroactive" to him because his case was final long after it was decided, and it was "previously []available" to him in 2011. *E.g.* ROA.1052 (recognizing "[u]nder a strict interpretation of [§ 2244(b)(2)(A)], any inmate who filed a federal petition

after 2002 would have to include an *Atkins* claim in his initial petition" or be barred by § 2244(b)(2)(A)).

That should be the end of the matter. There is *no other* "new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court" upon which Johnson's "claim relies." § 2244(b)(2)(A). Since Johnson filed his initial petition in 2011, the only cases in which the Supreme Court has spoken substantively on intellectual disability as a death penalty exemption are *Hall v. Florida*, 572 U.S. 701, 703 (2014), *Moore I* in 2017, and *Moore II* in 2019.[6] And assuming *arguendo* those cases created new rules of constitutional law, that's not enough under § 2244(b)(2)(A): those new rules "must have been 'made retroactive to cases on collateral review by the Supreme Court.'" *Tyler*, 533 U.S. at 662.

As every circuit to consider the issue has held, the Supreme Court has not. *See In re Richardson*, 802 F. App'x 750, 755–56 (4th Cir. 2020) ("*Hall* and *Moore* do not address retroactivity, and no subsequent

---

[6]    The Supreme Court also discussed *Atkins* in *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Shoop v. Hill*, 139 S. Ct. 504 (2019) (per curiam). But both cases analyzed a state court's application of *Atkins* under 28 U.S.C. § 2254(d). *See Brumfield*, 576 U.S. at 307; *Hill*, 139 S. Ct. at 505. Thus, they aren't relevant here because review under that statute is backwards-looking and only for reasonableness, rather than clarifying or creating new law.

Supreme Court case has held that *Hall* or *Moore* apply retroactively to cases on collateral review."); *In re Payne*, 722 F. App'x 534, 538 (6th Cir. 2018) (denying authorization and finding that "[e]ven if we assume, without deciding, that *Hall* and *Moore* announce new rules of constitutional law, Payne has not shown that these decisions apply retroactively" and "[m]ore importantly, Payne fails to show that the Supreme Court has determined that *Moore* and *Hall* apply retroactively"); *Fulks v. Watson*, 4 F.4th 586, 592 (7th Cir. 2021) ("Nor do *Hall*, *Moore I*, or *Moore II* create 'new rule[s] of constitutional law, made retroactive to cases on collateral review by the Supreme Court,' that would permit a second or successive motion under [28 U.S.C.] § 2255(h)(2)."); *Williams v. Kelley*, 858 F.3d 464, 474 (8th Cir. 2017) (disagreeing "that *Moore* announced a new rule of constitutional procedure" and noting whether *Moore* may eventually be given retroactive effect "is a matter for the Court to decide in due course and not by us in the posture in which this case has been presented to us"); *In re Bowles*, 935 F.3d at 1219 ("*Hall* did announce a new rule of constitutional law, but the Supreme Court has not made that rule retroactive to cases on collateral review.").

24

Indeed, the Supreme Court has criticized a federal circuit court for relying on *Moore I* to assess the reasonableness of a state court adjudication under § 2254(d) because it was not a clearly established rule at the time of the state court's adjudication. *See Hill*, 139 S. Ct. at 507–09; *cf. Weathers v. Davis*, 915 F.3d 1025, 1027–1028 (5th Cir. 2019) ("As with *Moore*, it cannot be contended that *Hall*, which overturned a formulaic IQ standard that had been used by the state of Florida but never in Texas, simply enunciated 'clearly established Federal law' made retroactive as required by AEDPA."). This Court has noted that *Hill* at the very least "contradicts" the idea that *Moore I*'s rejection of Texas's "previous framework for determining intellectual disability" could facilitate a successive *Atkins* claim. *In re Sparks*, 939 F.3d 630, 632 (5th Cir. 2019) (denying authorization on successive *Atkins* claims relying in *Moore I*).

In short, state inmates are entitled to "one chance to bring a federal habeas challenge" to their conviction. *Banister v. Davis*, 140 S. Ct. 1698, 1704 (2020). "[A]fter that, the road gets rockier." *Id.* That's by design, because when Congress enacted AEDPA it "made the limits on entertaining second or successive habeas applications more stringent

than before." *Id*. at 1707. The upshot: Johnson was required to raise an *Atkins* claim in his first federal petition or risk "forever forfeit[ing] his right" to federal review of that claim. ROA.1052. No subsequent new rule of constitutional law reanimates his otherwise long-available *Atkins* claim—neither *Hall* nor *Moore I* nor *Moore II*. Harsh though the result may be, it is what Congress intended. *See Dodd v. United States*, 545 U.S. 353, 359 (2005) ("Although we recognize the potential for harsh results in some cases, we are not free to rewrite the statute that Congress has enacted."); *cf. In re Webster*, 605 F.3d 256, 258 (5th Cir. 2010) (denying federal prisoner authorization to file successive *Atkins* claim where "there is no reason to believe that Congress intended the language 'guilty of the offense' [in § 2244(b)(2)(B)(ii)] to mean 'eligible for a death sentence'"). Under a plain reading of § 2244(b)(2)(A), Johnson's claim is indisputably successive.

### C.    This Circuit reads an extra-statutory exception into § 2244(b)(2)(A).

Despite the plain text of the statute, petitioners like Johnson and Cathey[7] have been permitted another go at habeas relief long after their "one chance" was over. That's because this Circuit permits petitioners to surmount the strict prohibition against successive petitions by arguing that their claim relies *not* on a previously unavailable new rule of constitutional law made retroactive by the Supreme Court, *see supra* Argument I.B, but that their claim has become meritorious—and therefore available—for some *other* reason. *See Cathey*, 857 F.3d at 227–32; *Johnson*, 935 F.3d at 294; *see also* ROA.1053 (citing *Milam*, *Halprin*, and *In re Soliz*, 938 F.3d 200 (5th Cir. 2019)). In doing so, this Court has read words into the statute that aren't there and read words out of it that are. It has done so in several ways.

---

[7]    As the Director noted in his petition for permission to appeal the district court's interlocutory order, Johnson's is not the only case affected by the controlling question of law at issue here. *See* Pet. Interlocutory Appeal 13 n.2. While this Court's *Cathey* decision preceded *Johnson*, Eric Cathey has only recently reached the second gateway inquiry in federal court. *See* Order, *Cathey v. Lumpkin*, No. 4:15-CV-2883 (S.D. Tex. May 18, 2022) (ordering the parties to submit simultaneous briefing addressing the Court's jurisdiction under § 2244(b)), ECF No. 48. The district court there has since administratively stayed the federal proceedings pending resolution of this appeal. *See* Order, *Cathey v. Lumpkin*, No. 4:15-CV-2883 (S.D. Tex. July 6, 2023), ECF No. 56.

*First*, by allowing petitioners to rely on extra-judicial sources to bootstrap a belated *Atkins* claim, the Court has read out the statutory requirement that a successive claim must rely on "a new rule of constitutional law." § 2244(b)(2)(A); *Tyler*, 533 U.S. at 662. Both the DSM-V and the Flynn Effect are developments in the methodology used for clinically diagnosing intellectual disability, *see supra* Statement of the Case III, not new rules of constitutional law created by the courts, *see, e.g., Hall*, 572 U.S. at 703 (noting the "legal determination of intellectual disability is *distinct from* a medical diagnosis" (emphasis added)). As the Eleventh Circuit convincingly stated, "Congress did not say that the claim could proceed if it relied on any other type of change in case law," *Bowles*, 935 F.3d at 1217–18, and it certainly did not say the claim could proceed if it relies on any change at all. "Congress knew how to say that if it had wanted to." *Id*. at 1218.

*Second*, in reading out the "new rule of constitutional law" language, this Circuit reads in other language, namely, it reads the factual-predicate prong of § 2244(b)(2)(B) into the new-rule prong of § 2244(b)(2)(A). "Congress knew how to provide for second and successive petitions based on factual developments, such as the publication of a new

DSM manual." *Bowles*, 935 F.3d at 1218; *see* § 2244(b)(2)(B)(i). Yet Congress chose to allow such claims to proceed only if the petitioner could *also* establish that he is actually innocent of the underlying offense. § 2244(b)(2)(B)(ii).[8] "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Duncan v. Walker*, 533 U.S. 167, 173 (2001) (quoting *Bates v. United States*, 522 U.S. 23, 29–30 (1997)). Facts, like the publication of a new medical manual, are accounted for in one prong but irrelevant to the other. *Compare* § 2244(b)(2)(A), *with* § 2244(b)(2)(B). *Cathey* and *Johnson* ignored that distinction.[9] *See, e.g., Johnson*, 935 F.3d at 293 (noting *Cathey* ruled that "it is correct to equate *legal* availability with changes in the standards for psychiatric

---

[8]    Here, too, Congress "could have said 'or ineligible for the death penalty,' but it did not." *Bowles*, 935 F.3d at 1218; *see Webster*, 605 F.3d at 258.

[9]    *Halprin* shows the slippery slope this Court created by conflating the new-rule and new-facts prongs together. In that case, the petitioner argued under *Cathey* and *Johnson* that his judicial bias claim was previously unavailable until newly discovered evidence made it viable. 788 F. App'x at 944. After this Court tried to distinguish Halprin's allegation from those at issue in *Cathey* and *Johnson*, it held Halprin "incorrectly conflate[d] the 'previously unavailable' requirement of subsection (b)(2)(A) with the new 'factual predicate' standard found in subsection (b)(2)(B)(i)." *Id.*

evaluation of the key intellectual disability *factual issues* raised by *Atkins*" (emphasis added)).

Further, by doing so, this Circuit makes it as easy for petitioners to surmount the successiveness bar as to surmount the statute of limitations. Like § 2244(b), the habeas statute of limitations contains two separate provisions governing reliance on new rules of constitutional law versus new factual predicate dates. *See* §§ 2244(d)(1)(C), (D). Unlike § 2244(b)(2)(B) however, the factual-predicate prong of § 2244(d)(1)(D) does *not* require a petitioner to also prove his actual innocence. That means Congress intended the successiveness bar—jurisdictional in nature—to be *harder* to surmount than the statute of limitations. This Court's interpretation of § 2244(b)(2)(A) renders null that intent. *Cf. Martinez v. Mukasey*, 519 F.3d 532, 544 (5th Cir. 2008) (recognizing "the well-established maxim that statutes should be construed to avoid an absurd result"). Indeed, it's telling that, in the court below, Johnson shoehorned the DSM-V into the new-legal-rule prong for purposes of successiveness while at the same time using it as a new *factual predicate* date for purposes of showing timeliness. *See* ROA.477.

Simply put, this Circuit "reads into the statute words that are not there when [it holds] that the publication of a new diagnostic manual can serve as a predicate to make a claim newly available under § 2244(b)(2)(A). That's not the statute that Congress wrote." *In re Bowles*, 935 F.3d at 1218.

*Third*, the Court ignores the requirement that any new rule of constitutional law must be "made retroactive to cases on collateral review." § 2244(b)(2)(A). "Retroactive" has only one generally accepted meaning: "extending in scope or effect to matters that have occurred in the *past*." *Retroactivity*, Black's Law Dictionary (11th ed. 2019) (emphasis added). Under that definition, *Atkins* cannot be "retroactive" to Johnson because he didn't even commit the capital murder until four years *after* it was decided.

Courts "must presume that [the] legislature says in a statute what it means and means in a statute what it says there." *Dodd*, 545 U.S. at 357 (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)). Certainly, Congress did not write a paradox into subsection (A) that a new constitutional rule can be made "retroactive" to cases in the *future*. *Cf. Martinez*, 519 F.3d at 544. The *Johnson* panel appeared to recognize

this paradox when it authorized Johnson's claim pursuant to *Cathey*. *See Johnson*, 935 F.3d at 293 (noting *Cathey* did not separately analyze whether *Atkins* "in a generic sense" was a new rule of law made retroactive to cases on collateral review "even though it was not so clearly retroactive in its application to Cathey"). But the only natural reading of "retroactive" doesn't square with *Cathey*.

Interpreting "retroactive" according to its plain use also makes sense "in [its] context and with a view to [its] place in the overall statutory scheme." *Tyler*, 533 U.S. at 665 (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)). Section 2244(b)(2)(A) is meant to provide a narrow exception to the blanket prohibition against second shots at federal habeas relief, not to allow petitioners to raise claims based on rules that were available to them the first go-round. And while the Supreme Court rarely makes new rules of constitutional law retroactive to cases on collateral review, that rarity does not mean the court has "license to question the decision on policy grounds." *Tyler*, 533 U.S. at 663 n.5. A rule created before a petitioner has ever engaged in collateral review cannot be "made retroactive" to him.

*Fourth,* this Court ignores that recognizing new rules and making them retroactive is, under § 2244(b)(2)(A), exclusively the Supreme Court's prerogative. *See Tyler*, 533 U.S. at 662. The Supreme Court did not publish the DSM-V or even mandate its use. *See, e.g., Hall*, 572 U.S. at 703 (holding that though such legal determinations are "informed by the medical community's diagnostic framework," it did not require the use of a particular manual); *Moore I*, 137 S. Ct. at 1044 (affirming *Hall*'s holding that legal determinations should be guided by the most recent medical guidelines but still not mandating the use of any particular diagnostic manual). And it certainly did not hold that the use of the DSM-V is retroactive to cases on collateral review. Allowing the courts of appeals to determine on a case-by-case basis whether new facts make a previously existing legal rule "retroactive" to a particular petitioner would allow courts of appeals to usurp the Supreme Court's authority— expressly delegated by Congress—to declare new rules retroactive. *See Tyler*, 533 U.S. at 663 (holding "new rules become retroactive, *not by the decisions of the lower court* or by the combined action of the Supreme Court and the lower courts, but simply by the action of the Supreme

Court" (emphasis added)). The text of the statute does not permit that result.

*Fifth*, this Court reads "previously unavailable" in a vacuum, divorced from the rest of the statute's text. *See King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) (describing the "cardinal rule that a statute is to be read as a whole, since the meaning of statutory language, plain or not, depends on context" (citation omitted)). But "under the statute Congress enacted, whether a claim is 'previously unavailable' depends on when a 'new rule of constitutional law' is made retroactive by the Supreme Court, because it is *that new rule* that the claim must rely on." *In re Bowles*, 935 F.3d at 1218 (emphasis added); *accord In re Graham*, 61 F.4th 433, 443 (4th Cir. 2023) (quoting *Bowles*); *Gray-Bey v. United States*, 209 F.3d 986, 988 (7th Cir. 2000) ("[F]or purposes of § 2255[(h)](2) a rule is 'unavailable' until the Supreme Court renders its decision, for it is the high court's decision that must be held retroactive."). "That a claim has become meritorious for some *other* reason has no bearing on whether the claim was 'previously unavailable' for § 2244(b)(2)(A) purposes." *In re Bowles*, 935 F.3d at 1218 (emphasis added). And given that the factual-predicate prong is distinct from the new-rule prong, it makes little sense

that Congress intended the courts to "search for outside factual predicates that may have made a claim meritorious." *Id.*

As the Eleventh Circuit appropriately recognized, reading "previously unavailable" to mean "meritorious" "equates the word 'cognizable' with the word 'meritorious,'" but those words don't "mean the same thing." *Id.* (comparing Black's Law Dictionary and Merriam-Webster Online definitions of "cognizable" and "meritorious"). Section § 2244(b)(2)(A) simply defines *when* a new legal claim is cognizable and therefore previously available. *Id.* ("If [the petitioner] could have [relied on that 'new rule' in his initial petition], then that claim was previously available to him and his application must be denied."); *cf. In re Edwards*, 865 F.3d 197, 203 (5th Cir. 2017) ("A petition is successive when it 'raises a claim . . . that was or *could have been* raised in an earlier petition . . . .'" (emphasis added) (quoting *Hardemon v. Quarterman*, 516 F.3d 272, 275 (5th Cir. 2008))). Any other interpretation renders the remainder of § 2244(b)(2)(A) essentially superfluous. *See Corley v. United States*, 566 U.S. 303, 314 (2009) (describing "one of the most basic interpretative canons," i.e., that "'[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous,

void or insignificant . . . . '" (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004))).

*Sixth,* this Court is clearly reading words into the statute that are not there because "previously available" has two separate meanings in this Circuit. On the one hand, the courts read it to mean that a claim was previously unavailable if it had no legal merit. *See* ROA.1051–54 (applying *Cathey* and *Johnson*). On the other, a claim was unavailable if it wasn't feasible, i.e., possible, for a petitioner to amend his initial federal petition to include it. *See* ROA.1054–56 (applying *In re Wood*, 648 F. App'x 388 (5th Cir. 2016) and *Cathey*). Indeed, the district court was required to apply *both* definitions to find Johnson not successive. *See* ROA.1051–56. "To give the[] same words a different meaning [in different factual contexts] would be to invent a statute rather than interpret one." *See Clark v. Martinez*, 543 U.S. 371, 378 (2005). And such an approach "would render every statute a chameleon," *id*. at 382, and "establish within [the Court's] jurisprudence . . . the dangerous principle that judges can give the same statutory text different meanings in different cases," *id*. at 386. The phrase "previously unavailable" cannot serve double duty in helping a petitioner overcome the successiveness bar.

In sum, by permitting petitioners like Johnson and Cathey to pass through the first gateway, this Circuit has gone far beyond the text of the statute—it has entirely ignored parts of it while adding words that simply aren't there. There is no "futility exception" to be found within the text of § 2244(b)(2)(A), except by judicial amendment.

### D. Courts are prohibited from judicially amending a statute.

The district court, believing itself bound by this Court's nonappealable, nonrehearable determinations, 28 U.S.C. § 2244(b)(3)(E), applied the Court's "futility exception" to find that Johnson's *Atkins* claim is not successive. ROA.1052 & n.10. The district court's opinion was error in two ways: 1) it wrongly assumed it was bound by *Cathey* and *Johnson*, and 2) it impermissibly read a judicially created exception into § 2244(b)(2)(A). This Court should reverse.

*First*, the district court twice rejected the Director's argument that, irrespective of their published status, it was not bound by this Court's authorization decisions in *Cathey* and *Johnson*. *See* ROA.603–04, 1049 n.7. The Director believes that the *Cathey* and *Johnson* decisions are wrongly decided. *See supra* Argument I.C. But the Court need not decide that at this juncture. Rather, the Court need only decide what binding

effect, if any, those decisions have on the second gateway inquiry. And the answer is clear: while published authorization decisions certainly have binding effect on *other* authorization cases (as *Cathey* did on *Johnson*, *see Johnson*, 935 F.3d at 292), they do not bind the district court's—or even this Court's—second gateway inquiry.

Authorization decisions, like *Johnson* and *Cathey*, are meant to be "tentative" and "preliminary." *See, e.g.*, *Cathey*, 857 F.3d at 226 ("Paramount to this decision is the standard of review at this stage and the process that follows."); *In re Morris*, 328 F.3d 739, 741 (5th Cir. 2003) (citing *Reyes-Requena v. United States*, 243 F.3d 893, 898–99 (5th Cir. 2001)). They mean nothing more than that the petitioner made a "sufficient showing of possible merit to warrant fuller exploration by the district court." *Johnson*, 935 F.3d at 291 (quoting *In re Morris*, 328 F.3d 739, 740 (5th Cir. 2003)).

But the second gateway is a distinct inquiry. *See Reyes-Requena*, 243 F.3d at 899 ("[T]he previous panel's grant of permission to Reyes to

file a second § 2255[10] motion did not preclude the [district court] from conducting its own threshold inquiry; in fact, the [district court] was obligated to do so."). Indeed, this Court has distinguished second-gateway decisions when deciding whether to authorize a claim because those decisions "concerned whether [the petitioner] *satisfied* § 2244(b)(2)'s requirements, not the preliminary issue we face now whether a *prima facie* case has been shown." *Cathey*, 857 F.3d at 233. "This distinction is important." *Id*.

And that means the converse should also be true: the second-gateway inquiry is bound not by tentative decisions of this Court granting leave to proceed but by the text of the statute. *See Banister*, 140 S. Ct. at 1704 (noting that the statutory provisions of § 2244(b) "bind the district court even when leave is given"); *Reyes-Requena*, 243 F.3d at 899 n.16 ("We first note that the previous grant [of authorization] was not dispositive; . . . the grant was based on only a prima facie showing, and the [district court] is obligated to conduct its own threshold inquiry[.]").

---

[10]    Though the successive motion in *Reyes-Requena* was brought under § 2255, this Court held that § 2244(b)(4) applied to such proceedings and decided this question under that provision.

*In re Swearingen*, 556 F.3d at 347 (on the second gateway, the district court is tasked with "independently determin[ing] whether the petition *actually satisfies* the stringent § 2244(b)(2) requirements"). As the Eleventh Circuit convincingly noted:

> [I]t would make no sense for the district court to treat our prima facie decision as something more than it is or to mine our order for factual ore to be assayed. The district court is to decide the § 2244(b)(1) & (2) issues fresh, or in the legal vernacular, *de novo*.

*Jordan v. Sec'y, Dep't of Corr.*, 485 F.3d 1351, 1358 (11th Cir. 2007) (citing *In re (Michael) Johnson*, 322 F.3d 881, 883 (5th Cir. 2003)).

This is akin to certificate of appealability grants, which this Court has held do not bind later panels in ruling on the merits of the claims. *See Black v. Davis*, 902 F.3d 541, 544 (5th Cir. 2018) ("Nonetheless, because a ruling by a motions judge in the initial stages of an appeal is not binding on the later merits panel, we have the responsibility to determine whether the significant ruling here is valid."). But there is even more reason to hold that authorization decisions have no binding precedential effect on the second gateway inquiry—the courts of appeals must consider motions for authorization under "stringent time limit[s]," *Tyler*, 533 U.S. at 664 (citing § 2244(b)(3)(D)), and often with a limited

40

record. What's more, authorization decisions are neither appealable nor subject to rehearing, § 2244(b)(3)(E), so neither party can test those determinations' correctness.[11] Under these circumstances, the district court erred in treating this Court's *Johnson* and *Cathey* decisions "as something more than" they are. *Jordan*, 485 F.3d at 1358.

*Second*, even if the Court's prima facie decisions have binding effect outside the authorization context, intervening decisions from both this Court and the Supreme Court show it is error to permit courts to read an extra-statutory equitable exception into the jurisdictional limits of § 2244(b).

Reading a judicially created exception into the successiveness statute runs directly afoul of the Supreme Court's reiteration in *Martinez Ramirez* that courts have no authority to amend or redefine a statute. 142 S. Ct. at 1736 ("We have no power to redefine when a prisoner 'has failed to develop the factual basis of a claim in State court proceedings.'" (quoting 28 U.S.C. § 2254(e)(2))); *see also id.* at 1737 ("Unlike for

---

[11]     Indeed, this is precisely why the Director sought permission to appeal the lower court's order at this juncture—it is the first opportunity for both the Director to challenge and this Court to resolve the implications and effects of *Cathey* and *Johnson*. The parties will also each have yet further opportunity to test this Court's determinations in these proceedings.

procedural default, we lack equitable authority to amend a statute to address only a subset of claims."). While *Martinez Ramirez* dealt with § 2254(e)(2), § 2244(b), too, is a "statute that [the courts] have no authority to amend." *Id.* at 1736; *see also Bowles v. Russell*, 551 U.S. 205, 214 (2007) (courts "have no authority to create equitable exceptions to jurisdictional requirements"). "Where Congress has erected a constitutionally valid barrier to habeas relief, a court *cannot* decline to give it effect." *Martinez Ramirez*, 142 S. Ct. at 1736 (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 402 (2013) (Scalia, J., dissenting)).

And though *Martinez Ramirez* is the latest reminder from the Supreme Court about the courts' limited power to rewrite habeas statutes, it's certainly not the first. In *Tyler*, the Supreme Court rejected the argument that it would be anomalous to interpret § 2244(b)(2)(A) to mean that the Court must hold a rule to be retroactive: "[E]ven if we disagreed with the legislative decision to establish stringent procedural requirements for retroactive application of new rules, we do not have license to question the decision on policy grounds." 533 U.S. at 663 n.5 (citing *Conn. Nat'l Bank*, 503 U.S. at 253–54).

Similarly, in *Dodd*, the Supreme Court recognized that its interpretation of the statute of limitations for § 2255 motions "makes it difficult for applicants filing second or successive § 2255 motions to obtain relief" because the Supreme Court "rarely decides that a new rule is retroactively applicable within one year of initially recognizing that right." 545 U.S. at 359. The Court nonetheless held that this "potential for harsh results in some cases" did not justify "rewrit[ing] the statute that Congress enacted." *Id*. "It is for Congress, not this Court, to amend the statute if it believes that the interplay of [the new-rule prong of the statute of limitations] and [the new-rule prong of the successive petition bar] of § 2255 unduly restricts federal petitioners' ability to file second or successive motions." *Id*. at 359–60. The takeaway of these cases is clear: the courts cannot avoid the hard jurisdictional limits imposed by § 2244(b) by equitably rewriting it.

The courts of appeals too have recognized that, while courts may work equitable exceptions to judicially created doctrines, as *Martinez v. Ryan*, 566 U.S. 1 (2012), did for procedural default, Congress's words may not be so circumvented. *See In re Bower*, 612 F. App'x 748, 752 (5th Cir. 2015) (unpublished) (holding petitioner failed to show a court can

"exercise[] its equitable powers to allow a movant to file a second or successive habeas petition when explicitly barred by the statute"); *United States v. Fulton*, 780 F.3d 683, 685 (5th Cir. 2015) (declining to address "whether attorney abandonment during an initial [federal] habeas proceeding should provide grounds for an exception to the bar against successive motions"); *In re Magwood*, 113 F.3d 1544, 1550–51 (11th Cir. 1997) ("Petitioner submits that his first federal habeas counsel cannot reasonably be expected to advance a claim based upon his own deficient performance on direct appeal. . . . We are not at liberty to disregard the clear mandate of [§ 2244(b)(2)].").  Indeed, this Court recently affirmed that the "narrow, equitable exception to procedural default" created by *Martinez* "has no applicability to the statutory limitations period prescribed by AEDPA." *Moody v. Lumpkin*, 70 F.4th 884, 892 (5th Cir. 2023).

In sum, the courts have no authority to read an equitable futility exception into § 2244(b)(2)(A). This Court's and the lower court's holdings to the contrary are error. This Court should reverse the lower court's successiveness determination and instruct it to dismiss Johnson's intellectual disability claim.

## II.    An Attorney's Intentional, Strategic Decisions Can Never be Extraordinary Circumstances Warranting Equitable Tolling.

Johnson's *Atkins* claim is indisputably untimely absent equitable tolling. *See* ROA.1057 ("Under any scenario, [Johnson] filed his federal petition late."); *see also* ROA.484 (district court acknowledging that it can "only reach the merits of Johnson's *Atkins* claim if he can show equitable tolling forgives a strict application of the AEDPA limitations period"). After an evidentiary hearing on the matter, the district court concluded that Johnson was not barred by the statute of limitations because his initial federal habeas counsel's conduct entitled him to equitable tolling. *See supra* Statement of the Case IV.  The district court is wrong.

A petitioner can demonstrate entitlement to equitable tolling by showing "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Equitable tolling is a fact- and case-specific inquiry. *Jackson v. Davis*, 933 F.3d 408, 410 (5th Cir. 2019); *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999). It is available "only in rare and exceptional circumstances." *Jackson*, 933 F.3d at 410 (quoting

*Hardy v. Quarterman*, 577 F.3d 596, 598 (5th Cir. 2009)). It principally applies where the petitioner is "actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Flores v. Quarterman*, 467 F.3d 484, 487 (5th Cir. 2006) (quoting *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999)). In other words, "[a] petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify." *Jackson*, 933 F.3d at 410 (quoting *Hardy*, 577 F.3d at 598). It is Johnson's burden to establish that he is entitled to equitable tolling. *See Pace*, 544 U.S. at 418.

In the court below, Johnson's equitable tolling case "depend[ed] on Mr. McCann's representation" of him during his initial federal habeas proceedings. ROA.1059. But the standard for establishing attorney conduct as a basis for equitable tolling is *high*. An attorney's decisions, even if in error, do not by themselves "excuse the failure to file [petitioner's] habeas petition in the district court within the one-year limitations period." *Fierro v. Cockrell*, 294 F.3d 674, 683 (5th Cir. 2002). Nor does an attorney's negligence in miscalculating a filing deadline provide a basis for tolling a statutory time limit. *Maples v. Thomas*, 565

U.S. 266, 282 (2012) (citing *Holland*, 560 U.S. at 651–52, 656); *see Lawrence v. Florida,* 549 U.S. 327, 336 (2007) (holding equitable tolling is not appropriate "for every person whose attorney missed a deadline"). Even where the state of the law may be unclear, equitable tolling is not warranted for an attorney missing the deadline. *See Flores*, 467 F.3d at 486–87 (holding, before it was clear whether state or federal law determined conviction finality for AEDPA limitations purposes, equitable tolling was still not warranted where counsel miscalculated).

Simply put, "mere attorney error or neglect is not an extraordinary circumstance such that equitable tolling is justified." *Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2002); *see also Christeson v. Roper*, 574 U.S. 373, 378 (2015) ("Tolling based on counsel's failure to satisfy AEDPA's statute of limitations is available *only* for 'serious instances of attorney misconduct." (emphasis added) (quoting *Holland*, 560 U.S. at 651–52);[12]

---

[12]     *See also In re Wilson*, 442 F.3d 872, 874–75 (5th Cir. 2006); *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000); *Kreutzer v. Bowersox*, 231 F.3d 460, 463 (8th Cir. 2000) (holding that attorney's confusion over applicability of § 2244(d)(1) did not justify equitable tolling); *Harris v. Hutchinson*, 209 F.3d 325, 330–31 (4th Cir. 2000) (holding that attorney's mistaken interpretation of § 2244(d) limitation provision did not justify equitable tolling); *Taliani v. Chrans*, 189 F.3d 597, 598 (7th Cir. 1999) (holding that attorney's miscalculation of limitations period was not valid basis for equitable tolling); *Sandvik v. United States*, 177 F.3d 1269, 1272 (11th Cir. 1999).

*cf. United States v. Riggs*, 314 F.3d 796, 799 (5th Cir. 2002) (where "a petitioner's *own* ignorance or mistake does not warrant equitable tolling, and it would be rather peculiar to treat a trained attorney's error more leniently than we treat a *pro se* litigant's error").[13]

The Director does not contest the district court's factual findings about McCann. *See supra* Statement of the Case IV. The Director disagrees, however, with the district court's legal conclusions based on those factual findings, i.e., that an experienced capital attorney's strategic decision about a claim's likelihood of success can ever constitute the kind of extraordinary circumstances necessary to show equitable tolling. Indeed, the district court's holding effectively creates a *Martinez*-like exception to the statute of limitations predicated on *federal* habeas counsel's supposed ineffectiveness. But as this Court recently recognized, no such exception exists. *Moody*, 70 F.4th at 892 (holding *Martinez* has "no applicability to the statutory limitations period prescribed by AEDPA").

---

[13]    To be sure, "an attorney's intentional deceit could warrant equitable tolling . . . if the petitioner shows that he reasonably relied on his attorney's deceptive misrepresentations." *Riggs*, 314 F.3d at 799. Here, McCann's actions were not intended to deceive Johnson; rather, he pursued what he understood to be the best route for his client's intellectual disability claims.

Moreover, the district court's rule—that a capital attorney may *never* "withhold viable claims when an avenue of federal relief exists," ROA.1061–62, 1069—is precisely the kind of bright-line rule that *Strickland v. Washington*, 466 U.S. 668 (1986), abjures. *Strickland* governs claims of ineffectiveness. *See, e.g.*, *Martinez*, 566 U.S. at 14 (a reviewing court looks to *Strickland* to determine whether state habeas counsel was ineffective). When judging counsel's effectiveness under that standard, there is a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Strickland*, 466 U.S. at 689. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. at 690–91.

Importantly, counsel is "entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective [] tactics and strategies." *Harrington v. Richter*, 562 U.S. 86, 107

(2011). Evaluating facts and deciding upon the strongest claims is the essence of an appellate lawyer's craft:

> The law does not require counsel to raise every available nonfrivolous defense. . . . Counsel also is not required to have a tactical reason—above and beyond a reasonable appraisal of a claim's dismal prospects for success—for recommending that a weak claim be dropped altogether.

*Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009); *see also Smith v. Robbins*, 528 U.S. 259, 285, 288 (2000) (appellate counsel is not ineffective for failing to raise every possible point on appeal; instead counsel should raise and brief only those issues he believes have the best chance of success); *cf. Smith v. Murray*, 477 U.S. 527, 534 (1986) (finding petitioner failed to establish cause for procedural default of claim where precedent "leave[s] no doubt that a deliberate, tactical decision not to pursue a particular claim [on appeal] is the very antithesis of the kind of circumstance that would warrant excusing a defendant's failure to adhere to a" State's procedural rules); *Johnston v. Mitchell*, 871 F.3d 52, 63 (1st Cir. 2017) ("Johnston's argument on this front boils down to the notion that a suppression motion would not have been frivolous, so his attorney had nothing to lose and everything to gain by taking a shot at it. But a lawyer's performance does not fall to the level of a Sixth

Amendment violation under *Strickland* simply because the lawyer fails to pursue any and all nonfrivolous strategies.").

Here, McCann did not abandon Johnson, *see* ROA.1059, nor was he in any way neglectful. McCann's actions never came close to the kind of conduct the courts have found sufficiently egregious to constitute extraordinary circumstances. *See Holland*, 560 U.S. at 636–642 (granting equitable tolling where attorney refused to communicate with petitioner for four years and ignored directives to file a federal petition); *Maples*, 565 U.S. at 283–90 (granting equitable tolling where counsel abandoned petitioner without leave of court and without notice to him).

Rather, McCann "never ceased litigating on Johnson's behalf," ROA.1059, and actively made strategic decisions throughout his representation of Johnson to raise what he calculated would be Johnson's best chances at relief, *id*. McCann needed no more tactical reason than that for not raising an *Atkins* claim sooner in federal court. *Mirzayance*, 556 U.S. at 127; *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."); *Smith*,

477 U.S. at 534 (holding cause not established where record unambiguously showed counsel "consciously elected not to pursue" a claim because his perception was "that the claim had little chance of success in the Virginia courts").

That the district court may have ultimately disagreed with McCann's assessment of the strength of Johnson's *Atkins* claim at various points in its evolution does not undermine the simple fact that McCann *made conscious, strategic decisions*. To suggest that an attorney—who had been practicing in front of the CCA for over two decades, was a preeminent advocate in the area of intellectual disability, and was heavily involved in the landmark case that overturned *Briseno*—was unreasonable to rely on that depth of experience in making an educated guess about the likelihood of success on an *Atkins* claim would turn *Strickland* on its head, obviating all discretion entrusted to learned defense counsel and allowing no room for strategy or disagreement. *See Strickland*, 466 U.S. at 681 ("Among the factors relevant to deciding whether particular strategic choices are reasonable are the experience of

the attorney[.]").[14] The district court's assessment that McCann had essentially nothing to lose by raising the claim and, therefore, should have raised it was rejected by the Supreme Court in *Mirzayance*. At best, McCann's strategic decision might have been error, but mere error is not enough to establish extraordinary circumstances either. *See Cousin*, 310 F.3d at 849; *Smith*, 477 U.S. at 535 (noting that, even if counsel erred in his assessment of the likelihood of a claim's success in appeal, it cannot "seriously be maintained that the decision not to press the claim on appeal was an error of such magnitude that it rendered counsel's performance constitutionally deficient under" *Strickland*).

---

[14]    The Director is unaware of any case where equitable tolling was granted based on an attorney's intentional, strategic decisions not to raise a claim in state and federal court for years. To the contrary, several district courts have found the opposite. *See, e.g.*, *Mabbs v. Gipson*, No. 2:13-cv-0550-JAM-GGH, 2014 WL 4098501, at *4 (E.D. Cal. Aug. 18, 2014) (holding petitioner was not entitled to equitable tolling "on the basis of ineffective assistance of counsel" where "petitioner fail[ed] to identify and explain how appellate counsel's strategic decisions [not to raise all meritorious arguments in his direct appeal] rise to the level of egregious conduct"); *Martinez v. Martinez*, No. SACV 10-540 DOC(CW), 2011 WL 672557, at *4 (C.D. Cal. Jan. 4, 2011) (rejecting claim for equitable tolling where it was "apparent that counsel made a well-considered strategic decision that these issues did not have a reasonable potential for success on appeal"); *cf. Lowe v. Knipp*, No. 07cv2232-LAB (CAB), 2013 WL 4525401, at *2 (S.D. Cal. Aug. 2, 2013) (rejecting argument made in context of motion for post-judgment relief that "unprofessional attorney conduct could amount to an extraordinary circumstance and toll the AEDPA statute of limitations," where, "[i]f an honest [attorney] error doesn't warrant equitable tolling, certainly a conscious but misguided strategic decision does not").

McCann's strategic decisions should have been "virtually unchallengeable," *Strickland*, 466 U.S. at 682, by the lower court; instead, the lower court turned the appellate lawyer's craft against him, creating a rule that an experienced attorney's run-of-the-mill decision not to raise what he perceives to be a weak claim in favor of other, stronger arguments is "extraordinary." This cannot be. The district court's equitable tolling decision should be reversed.

### III.  A Prima Facie Showing of Intellectual Disability Does Not Exempt a Petitioner from Diligently Pursuing his Rights.

Finding extraordinary circumstances is not the end of the equitable tolling inquiry; a petitioner must also show he diligently pursued his rights. *Holland*, 560 U.S. at 649. That's because "[e]quity is not intended for those who sleep on their rights." *Hardy*, 577 F.3d at 598 (quoting *In re Wilson*, 442 F.3d 872, 875 (5th Cir. 2006)). The district court side-stepped an analysis of Johnson's diligence, holding instead that petitioners who make a prima facie showing of intellectual disability are effectively exempt from having to show diligence. ROA.1067–68. This too is error.

Under this Court's precedent, a petitioner is still required to show diligence even if his attorney neglected or abandoned him (and McCann

did neither). *See Manning v. Epps*, 688 F.3d 177, 185 (5th Cir. 2012) ("Precedent instructs that petitioners seeking to establish due diligence must exercise diligence even when they received inadequate legal representation."). "The 'act of retaining an attorney does not absolve the petitioner of his responsibility for overseeing the attorney's conduct or the preparation of the petition." *Id.* (citing *Doe v. Menefee*, 391 F.3d 147, 175 (2d Cir. 2004) (Sotomayor, J., concurring)). And where even pro se petitioners are expected to comply with AEDPA's statute of limitations, it would be unfair to expect less from petitioners who are represented by counsel. *Id.*

Beyond that, this Court has already rejected the contention that intellectual disability claims are not subject to the statute of limitations. *See Henderson v. Thaler*, 626 F.3d 773, 781 (5th Cir. 2010); *In re Lewis*, 484 F.3d 793, 798 n.20 (5th Cir. 2007). Permitting a petitioner to evade the diligence requirement on the basis of a prima facie showing of intellectual disability would have the same effect. This is particularly true where, as here, the state courts have already found Johnson not intellectual disabled. *See Ex parte Johnson*, No. WR-73,600-02, 2019 WL 1915204, at *1 (Tex. Crim. App. Apr. 29, 2019) (dismissing *Atkins* claim

under Texas Code of Criminal Procedure article 11.071 § 5(a)(3)); *Ex parte Johnson*, No. WR-73,600-03, 2019 WL 3812803, at *1 (Tex. Crim. App. Aug. 13, 2019); *see also Busby v. Davis*, 925 F.3d 699, 710–11 (5th Cir. 2019) (holding the CCA's dismissal of an *Atkins* claim is "necessarily" an adjudication on the merits and is entitled to AEDPA deference). These findings should have been entitled to deference under 28 U.S.C. § 2254(e)(1); instead, the district court ignored them and obviated Johnson from any showing of diligence.

Given that this Court has already declined to categorically exempt *Atkins* claims from the statute of limitations, it was error for the district court to hold that such presumed intellectual disability would categorically exempt a petitioner from having to meet his diligence burden. The Court should reverse the lower court's diligence determination.

## CONCLUSION

For the foregoing reasons, the Court should reverse and remand with instructions to dismiss Johnson's petition as successive or, alternatively, to dismiss as untimely.

Respectfully submitted,

ANGELA COLMENERO
Provisional Attorney General of Texas


BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General for
Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

s/ Gwendolyn Vindell
GWENDOLYN VINDELL*
Assistant Attorney General
Criminal Appeals Division
State Bar No. 24088591
    *Counsel of Record

P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1400
gwendolyn.vindell2@oag.texas.gov

*Counsel For Respondent–Appellant*

# CERTIFICATE OF SERVICE

I do hereby certify that on July 25, 2023, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" (NEF) to the following attorneys of record, who consented in writing to accept the NEF as service of this document by electronic means:

Jeremy Don Schepers
Federal Public Defender
525 S Griffin St, Ste 629
Dallas, TX 75202
jeremy_schepers@fd.org

Michael Kawi
Office of the Federal Public Defender
525 S Griffin St, Ste 629
Dallas, TX 75202
Michael_Kawi@fd.org


                                        s/ Gwendolyn Vindell
                                        GWENDOLYN VINDELL
                                        Assistant Attorney General

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

1.     This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by 5th Cir. R. 5 and Rule 32(f), it has 11,611 words.

2.     This document complies with the typeface and type-style requirements of Fed. R. App. P. 5(c) and 32(c)(2) because the motion has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 MSO, in Century Schoolbook font, 14 points.

s/ Gwendolyn Vindell
GWENDOLYN VINDELL
Assistant Attorney General

**ELECTRONIC CASE FILING CERTIFICATIONS**

I do hereby certify that: (1) all required privacy redactions have been made; (2) this electronic submission is an exact copy of the paper document; and (3) this document has been scanned using the most recent version of a commercial virus scanning program and is free of viruses.

s/ Gwendolyn Vindell
GWENDOLYN VINDELL
Assistant Attorney General