Case No. 23-70002

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

DEXTER JOHNSON,
*Petitioner–Appellee*

V.

BOBBY LUMPKIN,
Director, Texas Department of Criminal Justice,
Correctional Institutions Division,
*Respondent–Appellant*

On Appeal from the United States District Court for the Southern
District of Texas, Houston Division, Civ. Action No. 4:19-CV-3047

## APPELLEE'S BRIEF

JASON D. HAWKINS
Federal Public Defender

Jeremy Schepers
Supervisor, Capital Habeas Unit
Texas Bar No. 24084578
jeremy_schepers@fd.org

Kathryn Hutchinson
Assistant Federal Public Defender
Texas Bar No. 24078707
katy_hutchinson@fd.org

Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, Texas 75202
(214) 767-2746
(214) 767-2886 (fax)

# CERTIFICATE OF INTERESTED PERSONS

Undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made so the judges of this Court may evaluate possible disqualification or recusal.

**The Honorable Alfred H. Bennett**    United States District Judge
Southern District of Texas,
Houston Division
Bob Casey United States Courthouse
515 Rusk St., Room 8631
Houston, TX 77002

**Dexter Darnell Johnson**    Petitioner–Appellee

**Capital Habeas Unit**    Counsel for Petitioner–Appellee
Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, Texas 75202

**Bobby Lumpkin,** Director, Texas    Respondent–Appellant
Department of Criminal Justice,
Correctional Institutions Division

**Gwendolyn Vindell**                    Counsel for Respondent–Appellant
Assistant Attorney General
Texas Attorney General's Office
Criminal Appeals Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711


Dated: October 23, 2023              */s/ Jeremy Schepers*
                                     Jeremy Schepers

## STATEMENT REGARDING ORAL ARGUMENT

This interlocutory appeal involves the district court's application of settled circuit precedent to the facts of this case. However, it also presents a unique legal posture with a complicated procedural history and fact pattern. For this reason, Appellee agrees that oral argument would assist this Court in resolving the case.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ..........................................i

STATEMENT REGARDING ORAL ARGUMENT ................................iii

TABLE OF CONTENTS ........................................................... iv

TABLE OF AUTHORITIES ....................................................vii

INTRODUCTION ................................................................... 1

STATEMENT OF THE CASE ................................................ 4

    I.    Mr. Johnson was not intellectually disabled under the prevailing medical standards when he was convicted and sentenced to death. ......................................................... 4

    II.    Patrick McCann was Mr. Johnson's state and federal habeas counsel........................................................... 5

    III.    Mr. McCann waited until Mr. Johnson's execution date was set before investigating a possible *Atkins* claim. The district court stayed Mr. Johnson's execution, "noting 'troubling concerns' about McCann." .......................... 9

    IV.    This Court authorized Mr. Johnson's successive *Atkins* claim to proceed in district court by applying *In re Cathey*, which "precedentially determined that it is correct to equate legal availability with changes in the standards for psychiatric evaluation of the key intellectual disability factual issues raised by *Atkins*." ...... 10

    V.    Proceedings in the district court. ......................................... 15

        A.    The Director repeatedly asked the district court to ignore or reject binding circuit precedent............... 15

        B.    The Director, "without any intervening change in the law or justifiable explanation," took "various positions contrary to that argued in his motion to dismiss." ................................................................... 16

# TABLE OF CONTENTS
(continued)

**Page**

C.  The district court held an evidentiary hearing to develop facts regarding the prior unavailability of Mr. Johnson's *Atkins* claim and whether equitable tolling was warranted. ................................ 19

D.  The district court applied settled circuit precedent to the facts of Mr. Johnson's case and authorized the *Atkins* claim to proceed. .................... 23

1.  The district court found that an *Atkins* claim was previously unavailable to Mr. Johnson. ............................................................. 23

2.  The district court held that "Mr. McCann's representation amounts to an extraordinary circumstance that warrants equitable tolling in this case." ........................................... 25

E.  The district court certified a single question for appeal under 28 U.S.C. § 1292(b), which was whether there can be judicially created exceptions to 28 U.S.C. § 2244(b)(2)(A). ........................................ 30

SUMMARY OF THE ARGUMENT ......................................................... 30

ARGUMENT ............................................................................ 35

I.  This Court should exercise its discretion to consider only the question certified by the district court. ................ 35

II.  The rule of orderliness precludes the relief sought by the Director here, namely, the overruling of *Cathey* and *Johnson*. ................................................................ 39

III.  The certified question can be easily resolved because this Court has not created any judicial exceptions to § 2244(b)(2)(A). .................................................... 41

IV.  The Director's arguments on equitable tolling cannot be reconciled with Supreme Court precedent or the district court's actions. ....................................... 49

# TABLE OF CONTENTS
(continued)

A.    The Director's claim that an attorney's allegedly "strategic" decision can never amount to an extraordinary circumstance is foreclosed by Supreme Court precedent............................................ 50

B.    The Director's claim that the district court categorically found that persons with intellectual disability are exempt from showing diligence is belied by the certified order and by prior orders below........................................................................... 57

CONCLUSION ...................................................... 58

CERTIFICATE OF SERVICE.................................................. 60

CERTIFICATE OF COMPLIANCE ....................................... 60

# TABLE OF AUTHORITIES

**Federal Cases**                                                    **Page(s)**

*Alexander v. Cockrell,*
   294 F.3d 626 (5th Cir. 2002) ................................................................ 51

*Atkins v. Virginia,*
   536 U.S. 304 (2002) ................................................................ *passim*

*Austin v. Davis,*
   876 F.3d 757 (5th Cir. 2017) ................................................................ 31

*In re Bower,*
   612 F. App'x 748 (5th Cir. 2015) ........................................................ 42

*In re Bowles,*
   935 F.3d 1210 (11th Cir. 2019) .......................................................... 47

*Brown v. Davenport,*
   596 U.S. 118 (2022) ............................................................................ 43

*Castellanos–Contreras v. Decatur Hotels, LLC,*
   622 F.3d 393 (5th Cir. 2010) .............................................................. 36

*In re Cathey,*
   857 F.3d 221 (5th Cir. 2017) ................................................. *passim*

*Christeson v. Roper,*
   574 U.S. 373 (2015) ............................................................................ 52

*Engle v. Isaac,*
   456 U.S. 107 (1982) ................................................................... 26, 53

*Fisher v. Johnson,*
   174 F.3d 710 (5th Cir. 1999) .............................................................. 51

*Gonzales v. CoreCivic, Inc.,*
   986 F.3d 536 (5th Cir. 2021) .............................................................. 35

# TABLE OF AUTHORITIES
(continued)

**Page**

*Hall v. Florida,*
    572 U.S. 701 (2014) ........................................................ 44, 45

*Hazel–Atlas Glass Co. v. Hartford–Empire Co.,*
    322 U.S. 238 (1944) ............................................................ 51

*Holland v. Florida*
    560 U.S. 631 (2010) ..................................................... *passim*

*Jackson v. Davis,*
    933 F.3d 408 (5th Cir. 2019) ............................................. 52

*Johnson v. Stephens,*
    746 F. App'x 375 (5th Cir. 2018) ........................................ 8

*In re Johnson,*
    935 F.3d 284 (5th Cir. 2019) ...................................... *passim*

*Manning v. Epps,*
    688 F.3d 177 (5th Cir. 2012) ............................................. 52

*Martinelli v. Hearst Newspapers, L.L.C.,*
    65 F.4th 231 (5th Cir. 2023) ............................................. 40

*Martinez v. Ryan,*
    566 U.S. 1 (2012) ....................................................... *passim*

*Mathis v. Thaler,*
    616 F.3d 461 (5th Cir. 2010) ........................... 34, 51, 55, 58

*McQuiggin v. Perkins,*
    569 U.S. 383 (2013) ...................................................... 28, 38

*Moore v. Texas,*
    581 U.S. 1 (2017) ....................................................... 21, 27, 54

*Mullis v. Lumpkin,*
    70 F.4th 906 (5th Cir. 2023) ............................................. 40

# TABLE OF AUTHORITIES
(continued)

**Page**

*Shinn v. Martinez Ramirez,*
  142 S. Ct. 1718 (2022)........................................................ 40

*Shoop v. Hill,*
  139 S. Ct. 504 (2019) ........................................................ 15

*United States ex rel. Simoneaux v. E.I. duPont de Nemours Co.,*
  843 F.3d 1033 (5th Cir. 2016)....................................... 30, 35

*In re Sparks,*
  944 F.3d 572 (5th Cir. 2019) ........................................... 26

*Strickland v. Washington,*
  466 U.S. 668 (1984)......................................................... 55

*Tamayo v. Stephens,*
  740 F.3d 986 (5th Cir. 2014)............................................ 38

*Trevino v. Thaler,*
  569 U.S. 413 (2013) ...................................................... 9, 22

*Tyler v. Cain,*
  533 U.S. 656 (2001) .................................................... 45, 46

*United States v. Caremark, Inc.,*
  634 F.3d 808 (5th Cir. 2011)............................................ 36

*Vaughan v. Anderson Reg'l Med. Ctr.,*
  849 F.3d 588 (5th Cir. 2017)........................................ 39, 40

*In re Wood,*
  648 F. App'x 388 (5th Cir. 2016) ..................................... 12

*Yamaha Motor Corp., U.S.A. v. Calhoun,*
  516 U.S. 199 (1996).......................................................... 35

# TABLE OF AUTHORITIES
(continued)

**State Cases**

*Ex parte Briseno*,
 135 S.W.3d 1 (Tex. Crim. App. 2004) ................................. 21, 22, 26, 54

*Johnson v. State*,
 No. AP-75,749, 2010 WL 359018 (Tex. Crim. App. Jan. 27,
 2010) ...................................................................................................... 5

*Ex parte Johnson*,
 No. WR-73,600-01, 2010 WL 2617804 (Tex. Crim. App. June
 30, 2010) ............................................................................................... 5

*Ex parte Johnson*,
 No. WR-73,600-02, 2019 WL 1915204 (Tex. Crim. App. Apr.
 29, 2019) ............................................................................................. 10

*Ex parte Johnson*,
 No. WR-73,600-03, 2019 WL 3812803 (Tex. Crim. App. Aug.
 13, 2019) ............................................................................................. 10

**Federal Statutes**

28 U.S.C. § 1292(b) ...................................................................... 30, 35, 36

28 U.S.C. § 2244.................................................................... 11, 16, 23, 32

28 U.S.C. § 2244(b) ................................................................................ *passim*

28 U.S.C. § 2244(b)(2)(A) ..................................................................... *passim*

28 U.S.C. § 2244(b)(2)(B) ................................................................. 11, 45

28 U.S.C. § 2244(b)(3) ............................................................................ 18

28 U.S.C. § 2244(b)(4) .............................................................................. 2

28 U.S.C. § 2254(d)(1) ............................................................................ 15

# TABLE OF AUTHORITIES
(continued)

**Page**

28 U.S.C. § 2254(e)(1) ................................................................ 57

28 U.S.C § 2254(e)(2) ................................................................ 40

**Rules**

Fed. R. Civ. P. 60(b) ................................................................ 11

## INTRODUCTION

This Court authorized Mr. Johnson to file a second or successive federal habeas petition under 28 U.S.C. § 2244(b). *In re Johnson*, 935 F.3d 284 (5th Cir. 2019). That petition contains one claim: that Mr. Johnson is intellectually disabled under *Atkins v. Virginia*, 536 U.S. 304 (2002), so the Eighth Amendment bars his execution. In 2007, when Mr. Johnson was sentenced to death, he was not intellectually disabled under the prevailing medical standards. That changed six years later with the publication of the DSM-5, which altered the diagnostic criteria for intellectual disability.

In authorizing that petition to proceed, this Court applied the plain language of § 2244(b)(2)(A) and this Court's prior interpretation of that statute in *In re Cathey*, 857 F.3d 221 (5th Cir. 2017). *Cathey* and *Johnson* focus on what the phrase "previously unavailable" means in § 2244(b)(2)(A). In *Cathey*, this Court held that "a claim must have some possibility of merit to be considered available" under § 2244(b)(2)(A). 857 F.3d at 232. *Cathey*'s interpretation of the term "previously unavailable" in § 2244(b)(2)(A) "precedentially determined that it is correct to equate legal availability with changes in the standards for psychiatric

evaluation of the key intellectual disability factual issues raised by *Atkins*." *Johnson*, 935 F.3d at 294. Accordingly, this Court "appl[ied] that decision [*Cathey*] to a new, but not meaningfully distinguishable, set of facts" present in Mr. Johnson's case. *Id.*

The district court then applied settled circuit precedent to the facts of Mr. Johnson's case and authorized the *Atkins* claim to proceed. *See* 28 U.S.C. § 2244(b)(4). In a thorough and detailed opinion, it held that Mr. Johnson's *Atkins* claim was previously unavailable under § 2244(b)(2)(A). ROA.1051–57. The district court also held that equitable tolling was warranted for this claim. ROA.1057–70. It was deeply troubled by the actions of Mr. Johnson's prior counsel, Patrick McCann. For numerous reasons, the district court held that "Mr. McCann's representation was an impediment to filing which, until removed, precluded Johnson from advancing an *Atkins* claim . . . Mr. McCann's representation amounts to an extraordinary circumstance that warrants equitable tolling in this case." ROA.1067.

Subsequently, the district court certified a single question for appeal: "Whether there can be judicially created exceptions to 28 U.S.C. § 2244(b)(2)(A)." ROA.1122. Resolution of that question is not hard. This

circuit has not created any judicial exceptions to § 2244(b)(2)(A). Instead, it has interpreted the terms in the statute to provide a limited pathway for petitioners to meet the statutory framework, as opposed to providing a pathway for the petitioner to be excepted from its requirements.

This Court can and should stop there. But to the extent it exercises its discretion to consider matters in the district court's order beyond the certified question, the rule of orderliness bars this Court from revisiting its interpretation of § 2244(b)(2)(A) at this juncture. *Cathey* and *Johnson* combine to provide the binding interpretation of that statute, and no justification exists for this Court to depart from those decisions now.

The Director also asks this Court to address the district court's careful consideration of whether equitable tolling was warranted. The Director's arguments here fare no better. The Director requests that this Court invent a rigid, *per se* rule that when counsel makes an allegedly "strategic" decision not to present a claim, equitable tolling can never be granted. That rule has no basis in the Supreme Court or this Court's precedent. The Director's second argument on equitable tolling misstates the district court's ruling. Rather than exempting Mr. Johnson from the diligence requirement to receive equitable tolling, the district court held

that "[u]nder the fact-dependent circumstances of this case, the Court finds that Johnson has shown the requisite diligence to merit equitable tolling." ROA.1068.

This Court should affirm the district court's October 2022 order allowing Mr. Johnson's *Atkins* claim to proceed in district court.

## STATEMENT OF THE CASE

### I.    Mr. Johnson was not intellectually disabled under the prevailing medical standards when he was convicted and sentenced to death.

Dexter Darnell Johnson was convicted and sentenced to death in connection with the rape and murder of Maria Aparece. *Johnson*, 935 F.3d at 287. Prior to Mr. Johnson's trial in 2007, the Supreme Court held that the Eighth Amendment prohibits a death sentence for a person with an intellectual disability. *See id.* at 292; *see generally Atkins v. Virginia*, 536 U.S. 304 (2002). Although Mr. Johnson presented testimony at his punishment phase from neuropsychologist Dr. Dale Watson about mental health issues, his evaluation of Mr. Johnson "specifically precluded any diagnosis of intellectual disability under the then-governing professional standards." ROA.464.

The applicable framework that governed diagnoses of intellectual disability at that time was the DSM-IV-TR. *See Johnson*, 935 F.3d at 292; ROA.124 ¶ 5. That manual primarily emphasized IQ scores to diagnose an intellectual disability. *Johnson*, 935 F.3d at 292; ROA.124 ¶ 5. Based on IQ test scores obtained by Dr. Watson at the time of trial, he did not think that Mr. Johnson met the then-diagnostic criteria for intellectual disability. ROA.124 ¶ 5. Dr. Watson further concluded that "[b]ecause of that [finding], it was my belief that an assessment of his adaptive functioning was not necessary." *Id.* (quoting 31 RR 263).[1] The Texas Court of Criminal Appeals ("TCCA") affirmed Mr. Johnson's conviction and sentence on direct appeal in 2010. *Johnson v. State*, No. AP-75,749, 2010 WL 359018, at *1 (Tex. Crim. App. Jan. 27, 2010).

## II. Patrick McCann was Mr. Johnson's state and federal habeas counsel.

The trial court appointed attorney Patrick F. McCann to represent Mr. Johnson in state habeas proceedings. *Johnson*, 935 F.3d at 287; ROA.464. The TCCA denied that application. *Ex parte Johnson*, No. WR-

---

[1] In relevant part, Dr. Watson testified that "[b]ased upon the IQ scores, I don't believe that he would meet the first prong for the diagnosis of mental retardation," so he "was never asked to do adaptive functioning testing" because his "initial determinations would suggest that that was not necessary." 31 RR 263; *see* ROA.1043.

73,600-01, 2010 WL 2617804 (Tex. Crim. App. June 30, 2010). It did not include an intellectual disability claim. *Johnson*, 935 F.3d at 287.

Mr. McCann was then appointed to represent Mr. Johnson in his federal habeas proceedings. *Id.*; ROA.464–65.[2] As with Mr. Johnson's state habeas application, his federal petition did not include an intellectual disability claim. *Johnson*, 935 F.3d at 287.[3]

While Mr. Johnson's federal petition was pending—and while Mr. McCann continued to represent Mr. Johnson—the Supreme Court decided *Martinez v. Ryan*, 566 U.S. 1 (2012).[4] That case, for the first time, allowed a federal habeas petitioner to overcome the procedural default of an ineffective-assistance-of-trial-counsel claim by establishing that state habeas counsel's ineffectiveness caused the default. *See id.* at 17. Although Mr. Johnson's initial federal petition did not include any claims regarding trial counsel's ineffectiveness, while his initial petition was pending in district court, Mr. McCann filed a motion seeking to amend

---

[2] As the district court noted, "[a]t that time, federal courts frequently appointed an inmate's state habeas counsel with the understanding that an attorney's experience in state court would aid the preparation and litigation of a federal habeas petition." ROA.465.

[3] *See* Petition for Writ of Habeas Corpus, *Johnson v. Stephens*, No. 4:11-cv-2466 (S.D. Tex. June 28, 2011), ECF No. 1.

[4] *Martinez* was issued on March 20, 2012. *See* 566 U.S. at 1.

the petition to raise such a claim and noted that he was "remiss" in previously failing to do so. Motion to Abate, *Johnson v. Stephens*, No. 4:11-cv-2466 (S.D. Tex. Dec. 28, 2012), ECF No. 14; *see Johnson*, 935 F.3d at 277–78; ROA.466. While Mr. McCann evoked *Martinez* as cause to overcome the default in failing to raise an ineffective-assistance-of-trial-counsel claim, he never sought to substitute conflict-free counsel to represent Mr. Johnson, despite having done so in a different case. ROA.467 & n.6.

Approximately six months after Mr. McCann filed this motion, and while the parties were still briefing it, the American Psychiatric Association published the DSM-5. *Johnson*, 935 F.3d at 293; ROA.467, ROA.469. These "new diagnostic guidelines included significant changes in the diagnosis of intellectual disability, which changed the focus from specific IQ scores to clinical judgment." *Johnson*, 935 F.3d at 293. In addition, it "recognize[d] that an individual with an IQ score over 70 may still qualify as intellectually disabled." *Id.* Despite these substantial changes to the diagnostic framework, Mr. McCann did not investigate an *Atkins* claim at this juncture. ROA.1045.

Less than three months after the DSM-5's publication, the district court denied Mr. Johnson's petition and his motion to amend in light of *Martinez*. ROA.469.[5] In particular, the district court denied the motion to abate because Mr. Johnson did not show good cause for waiting to raise his unexhausted claims until federal review and denied the motion to amend because "[r]estarting the process at th[at] stage would needlessly insert delay into the proceedings" and because Mr. Johnson would face significant procedural hurdles in state court. ROA.469–70 (quoting Memorandum and Order, *Johnson v. Stephens*, No. 4:11-cv-2466 (S.D. Tex. Aug. 13, 2013), ECF No. 19)). This Court ultimately affirmed the denial of Mr. Johnson's claims in 2018. *Johnson v. Stephens*, 746 F. App'x 375 (5th Cir. 2018).

---

[5] The court ordered additional briefing on one claim but ultimately denied it the following year. *See* Memorandum and Opinion, *Johnson v. Stephens*, No. 4:11-cv-2466 (S.D. Tex. June 25, 2014), ECF No. 31.

### III. Mr. McCann waited until Mr. Johnson's execution date was set before investigating a possible *Atkins* claim. The district court stayed Mr. Johnson's execution, "noting 'troubling concerns' about McCann."[6]

Mr. McCann still represented Mr. Johnson in December 2018 when Texas set Mr. Johnson's execution date for May 2, 2019. ROA.470. Approximately one month later, Mr. Johnson wrote a *pro se* letter to the district court requesting Mr. McCann's removal as his attorney due to the conflict of interest that arose following *Martinez* and *Trevino v. Thaler*, 569 U.S. 413 (2013). *Johnson*, 935 F.3d at 288; ROA.470–71. The district court accordingly appointed the Federal Public Defender ("FPD") to represent Mr. Johnson in order to investigate potential claims implicating *Martinez*. ROA.471.

It was only at this juncture—*after* Mr. Johnson had received an execution date—that Mr. McCann began to investigate a potential intellectual disability claim for Mr. Johnson. *See Johnson*, 935 F.3d at 288; ROA.1046 ("Mr. McCann only began an investigation into *Atkins* relief after the State of Texas set Johnson's execution for May 2, 2019."). The FPD later moved to remove Mr. McCann from Mr. Johnson's case.

---

[6] *Johnson*, 935 F.3d at 288.

*Johnson*, 935 F.3d at 288. Less than a week after the FPD sought Mr. McCann's removal, Mr. McCann filed a successive state habeas application raising an intellectual disability claim, which the TCCA denied on April 29, 2019. *Ex parte Johnson*, No. WR-73,600-02, 2019 WL 1915204, at *1 (Tex. Crim. App. Apr. 29, 2019). The district court stayed Mr. Johnson's execution the following day, "noting 'troubling concerns' about McCann." *Johnson*, 935 F.3d at 288. Mr. McCann withdrew from Mr. Johnson's case two days later. *Id.*; ROA.472.

**IV.    This Court authorized Mr. Johnson's successive *Atkins* claim to proceed in district court by applying *In re Cathey*, which "precedentially determined that it is correct to equate legal availability with changes in the standards for psychiatric evaluation of the key intellectual disability factual issues raised by *Atkins*."[7]**

A second execution date for Mr. Johnson was set for August 15, 2019. ROA.472. Now represented solely by the FPD, Mr. Johnson filed a third state habeas application on August 6, 2019, also raising an intellectual disability claim. ROA.472. The TCCA denied this application as well. *Ex parte Johnson*, No. WR-73,600-03, 2019 WL 3812803, at *1 (Tex. Crim. App. Aug. 13, 2019). Mr. Johnson also asked this Court to

---

[7] *Johnson*, 935 F.3d at 294.

authorize the district court to consider a second or successive habeas petition under 28 U.S.C. § 2244. *Johnson*, 935 F.3d at 288.[8]

This Court concluded in *In re Johnson* that Mr. Johnson had made a prima facie showing that he met the requirements for authorization to file a second or successive federal habeas petition under 28 U.S.C. § 2244(b). *Johnson*, 935 F.3d at 291–95.[9] In doing so, this Court applied the plain language of § 2244(b) and its prior interpretation of that statute in *In re Cathey*, 857 F.3d 221 (5th Cir. 2017). Because it was undisputed that Mr. Johnson had not presented his intellectual disability claim in a prior federal petition, this Court focused on whether Mr. Johnson could demonstrate that *Atkins* was previously unavailable to him despite being decided before his trial. *See Johnson*, 935 F.3d at 292 (noting that the Director conceded that Mr. Johnson had not previously pleaded an intellectual disability claim).

---

[8] Mr. Johnson had also filed a motion for relief from judgment under Fed. R. Civ. P. 60(b), for which this Court denied a certificate of appealability. *Johnson*, 935 F.3d at 288.

[9] Although Mr. Johnson had also argued that he met the requirements under 28 U.S.C. § 2244(b)(2)(B), this Court concluded that Mr. Johnson only met the requirements under § 2244(b)(2)(A). *Johnson*, 935 F.3d at 292 n.1.

*Cathey* conclusively answered the meaning of the term "previously unavailable" in 28 U.S.C. § 2244(b)(2)(A) in this Circuit.[10] Mr. Cathey argued that although *Atkins* had been decided before he filed his initial federal petition, *Atkins* was nonetheless "previously unavailable" to him because at the time he filed his initial petition, he was unable to pursue a viable *Atkins* claim due to the diagnostic criteria then in existence. *See Cathey*, 857 F.3d at 227–28.[11] In evaluating this argument, this Court first analyzed whether or not the new rule was announced while a person's initial petition was pending; if it was, under existing circuit precedent this Court must determine whether it was "'feasible to amend his or her pending petition to include the new claim.'" *Id.* at 229 (quoting *In re Wood*, 648 F. App'x 388, 391 (5th Cir. 2016)). This Court further explained that it is not feasible to amend under circuit precedent when,

---

[10] As *Cathey* made clear, there is no dispute that *Atkins* created a new rule of constitutional law made retroactive by the Supreme Court to cases on collateral review. *Cathey*, 857 F.3d at 227 (citations and quotations omitted).

[11] In particular, Mr. Cathey argued that when he filed his initial federal petition, the only IQ score available to him at that time did not place him in range of an intellectual disability diagnosis. *Cathey*, 857 F.3d at 227. Two developments, however, made the claim newly available to him. First, there was more widespread acceptance of the Flynn Effect, which posits that due to aging norms in intelligence testing, points should be deducted from an IQ score for each year since the test was normed. *Id.* Second, Mr. Cathey learned only after filing his initial petition that the State possessed an IQ score for him of 73, which also newly placed him in the range for intellectual disability.

*inter alia*, deficient representation makes a claim "functionally unavailable." *Id.*

In *Cathey*, this Court further held that "a claim must have some possibility of merit to be considered available" under § 2244(b)(2)(A). *Id.* at 232. Under this statute, it is not necessary to determine when precisely a claim becomes available, as § 2244(b)(2)(A) "only requires that the constitutional rule was 'previously unavailable' at the time of [the] initial habeas filing." *Id.* at 233 n.75. This Court ultimately determined that Mr. Cathey had made a prima facie showing that it was not feasible to amend his petition and that his *Atkins* claim was previously unavailable to him. *Id.* at 233.

*Cathey*'s interpretation of the term "previously unavailable" in § 2244(b)(2)(A) "precedentially determined that it is correct to equate legal availability with changes in the standards for psychiatric evaluation of the key intellectual disability factual issues raised by *Atkins*." *Johnson*, 935 F.3d at 294. Accordingly, this Court "appl[ied] that decision [*Cathey*] to a new, but not meaningfully distinguishable, set of facts" present in Mr. Johnson's case. *Id.* In doing so, this Court noted the similarity between Mr. Johnson's case and *Cathey* and how both

13

petitioners "were presented . . . with reasons that an *Atkins* claim is possibly meritorious when it had not previously been." *Id.* Whereas Mr. Cathey had relied on "the judicial recognition of the Flynn Effect and the abandonment of any rule-of-thumb for a maximum relevant IQ level," Mr. Johnson relied on the change in diagnostic standards as embodied in the publication of the DSM-5, which did not occur until six years after his conviction. *Id.* at 293.

Moreover, this Court determined as a prima facie matter that it was not feasible for Mr. Johnson to amend his federal petition in light of the change in diagnostic standards because the DSM-5 was published so close to the denial of his initial petition. *See id.* Because this Court also determined that Mr. Johnson had made a prima facie showing of intellectual disability, it authorized his motion to allow the district court to determine whether Mr. Johnson's intellectual disability claim was previously unavailable, whether his claim was timely, and if so, whether Mr. Johnson is indeed intellectually disabled. *See Johnson*, 935 F.3d at 291, 295–96.

## V.    Proceedings in the district court.

### A.    The Director repeatedly asked the district court to ignore or reject binding circuit precedent.

Notwithstanding this Court's precedential holdings in *Cathey* and *Johnson*, as soon as this case was in the district court, the Director repeatedly urged the court not to follow this precedent and to dismiss Mr. Johnson's petition.

The Director moved to dismiss Mr. Johnson's petition as untimely and impermissibly successive. *See* ROA.370–419. In doing so, the Director argued that this Court "erred" in determining that Mr. Johnson's intellectual disability claim relied on a new rule of constitutional law. ROA.399, ROA.402. The Director also suggested that the district court was not bound by this Court's holding on that point. *See id.* ("even assuming this Court is bound by the Fifth Circuit's holding").

The Director "continue[d] to assert that *Cathey* was effectively overruled by the Supreme Court in *Shoop* [*v. Hill*, 139 S. Ct. 504 (2019)]," ROA.400, without acknowledging the fact that this Court expressly rejected this argument that the Director had raised in the authorization briefing, *Johnson*, 935 F.3d at 293 (*Shoop* "concerned the relitigation bar of Section 2254(d)(1), and it did not overrule *Cathey*, which concerned a

prima facie showing under Section 2244."). On this point, the district court dismissed the argument out of hand because it "lacks authority to overrule the Fifth Circuit on that legal determination." ROA.479.

The district court also rejected the Director's arguments on the feasibility to amend Mr. Johnson's initial petition and on equitable tolling because it lacked sufficient information to make such determinations at that juncture. ROA.482–83, ROA.487. The court accordingly granted Mr. Johnson's request for an evidentiary hearing. ROA.487.

### B.    The Director, "without any intervening change in the law or justifiable explanation," took "various positions contrary to that argued in his motion to dismiss."[12]

Then, the Director moved the district court to reconsider granting an evidentiary hearing. *See* ROA.497. The Director first argued that the district court could not consider the issue of equitable tolling until it had determined that it had subject matter jurisdiction. ROA.499–503. He did so despite the fact that he had previously argued to the district court that it could determine both issues at the same time, which the Director now claimed to be error. ROA.499 n.2.

---

[12] ROA.600 n.1.

The Director further argued that the district court "is not bound by *Johnson* or *Cathey*." ROA.504. In doing so, the Director claimed that the district court was not bound by this Court's *interpretation* of the statutory terms in § 2244(b) based on this Court's preliminary role in determining whether a petition has made a *prima facie case* under that section. *See* ROA.504–08. Indeed, the Director argued that "neither case holds any precedential value" to the district court's role in the gatekeeping context. ROA.507.[13]

Finally, the Director argued that there is no "futility exception" in § 2244(b), which the Director characterized as arising out of a "nonprecedential determination" set forth in *Cathey*. ROA.515. In arguing to the district court that it was erroneous to rely on what it termed a "nonprecedential determination" in *Cathey*, the Director primarily relied on an out-of-circuit authorization case, evenly though that was plainly nonprecedential under the Director's logic (and the law). *See* ROA.516.

---

[13] The Director's new argument regarding whether precedential Fifth Circuit cases bind the district court is directly contrary to the argument the Director made in the motion to dismiss, which conceded that the district court was bound by this Court's interpretation of "previously unavailable." *See* ROA.568–69, ROA.600.

17

The district court rejected the Director's arguments for reconsideration. ROA.599. At the outset, the district court observed that "without any intervening change in the law or justifiable explanation, Respondent's pending motion stakes out various positions contrary to that argued in his motion to dismiss." ROA.600 n.1. It therefore found that "Respondent could, and should, have raised those arguments in his motion to dismiss." ROA.600 n.1. The district court then rejected each of the Director's arguments. ROA.601. First, the district court noted that the Director failed to submit any specific authority that prohibited it from considering timeliness along with jurisdiction. ROA.602. Second, the district court found that the Director had submitted no authority "instructing district courts to ignore a circuit court's legal analysis—such as whether an *Atkins* claim was previously unavailable until the advent of the DSM-5—only because the circuit court developed that law in the threshold Section 2244(b)(3) context." ROA.603–04. The district therefore denied the Director's motion for reconsideration. ROA.608.

**C.   The district court held an evidentiary hearing to develop facts regarding the prior unavailability of Mr. Johnson's *Atkins* claim and whether equitable tolling was warranted.**

The evidentiary hearing occurred on March 31, 2022, where Mr. McCann was the sole witness. ROA.1182–84. Mr. McCann's testimony showed that he believed Mr. Johnson to be intellectually disabled since very early in his representation; he was aware of the DSM-5's publication and understood its significance for intellectual disability claims; and that he nevertheless did not even begin to investigate that claim until after an execution date was set, despite doing so for other similarly-situated clients.

Mr. McCann testified that within one year of meeting Mr. Johnson, he came to believe that Mr. Johnson was intellectually disabled. ROA.1318. Mr. McCann had therefore "always anticipated filing an intellectual disability claim" on behalf of Mr. Johnson, "ever since after [his] first year with Mr. Johnson." ROA.1305. He also emphasized that "[i]t was always [his] belief that he could probably prove as a factual matter that Mr. Johnson was, in fact, intellectually disabled." ROA.1319.

Mr. McCann was also quite aware not only of the DSM-5's publication in 2013, but also its significance as it related to intellectual

disability claims. He testified that he was very familiar with the DSM and that it is "[e]xtremely important" to criminal defense work. ROA.1236. Indeed, he averred that he "consider[s] it as important as being familiar with the Code of Criminal Procedure." ROA.1237. Mr. McCann was also "very aware" of its publication because he "had been actually hoping for some changes" for which he was "excited." ROA.1294. In particular, Mr. McCann noted that the DSM-5 significantly changed the diagnostic criteria for intellectual disability, among other things. ROA.1238–39. He further pointed out that the DSM-5 had a "tremendous" impact on defining intellectual disability because it places less emphasis on IQ scores alone and more emphasis on adaptive deficits and clinical judgment by the examining professional. ROA.1240. Mr. McCann also acknowledged that the DSM-5 "became a source of legal claims for new facts." ROA.1241.

Despite this knowledge and its potential impact for an intellectually disabled client such as Mr. Johnson, Mr. McCann deliberately chose not to advance, or even begin investigating, a claim that the district court described as a "life-or-death issue." ROA.1270. He stated that he worried about raising an intellectual disability claim in

light of *Ex parte Briseno*, 135 S.W.3d 1 (Tex. Crim. App. 2004), a case in which the TCCA created non-medical factors to assess intellectual disability claims. In a colloquy with the district court on this very subject, Mr. McCann repeatedly told the court that he "chose not to" raise an intellectual disability claim in Mr. Johnson's case, even after the Supreme Court issued *Moore v. Texas*, 581 U.S. 1 (2017), which ruled the use of the *Briseno* factors to be unconstitutional. ROA.1270–71; *see* ROA.1265. Even after this decision, Mr. McCann claimed that he needed to wait for a more favorable standard before raising an intellectual disability claim for Mr. Johnson. ROA.1322.

Mr. McCann also admitted that, despite failing to advance an intellectual disability claim on behalf of Mr. Johnson, he was advancing such claims on behalf of other criminal defense clients.[14] *See* ROA.1255–56. He clarified that it was "fair to say that [he was] actively litigating intellectual disability issues [o]n other cases when the DSM-5 was published." ROA.1287; *see* ROA.1293–94 (same). In particular, Mr. McCann acknowledged that he handled Bobby Moore's intellectual

---

[14] In total, Mr. McCann estimated that he has litigated a least twenty to twenty-five intellectual disability claims over the course of his career. ROA.1283.

disability claim in state court, including in an evidentiary hearing on the claim. ROA.1286. He further admitted that he had convinced the trial court judge to grant relief, notwithstanding the so-called impediment of *Briseno*. ROA.1286. He also admitted that Mr. Moore initially lost under the *Briseno* standard. ROA.1333. But at the same time, Mr. McCann testified that he did not advance an intellectual disability claim for Mr. Johnson because of, among other things, the problematic nature of the *Briseno* factors for Mr. Johnson. ROA.1297. Mr. McCann never, however, challenged the use of the *Briseno* factors in Mr. Johnson's case.

Finally, even after repeatedly testifying that he never brought an intellectual disability claim in Mr. Johnson's case due to fears that it might get rejected, Mr. McCann admitted that he brought other long-shot claims in Mr. Johnson's case. Following *Martinez*, Mr. McCann testified that federal habeas counsel had to evaluate the effectiveness of state habeas counsel. ROA.1213.[15] Although at this time Mr. McCann did not raise an intellectual disability claim, he did, however, raise an

---

[15] Mr. McCann never informed Mr. Johnson about the potential conflict of interest that arose from his continued representation of Mr. Johnson following *Martinez* and *Trevino*. ROA.1235.

ineffective-assistance-of-trial-counsel claim pursuant to *Martinez.* ROA.1235. When asked about that claim, Mr. McCann admitted that the claim was not "substantial," but he raised it because "it was worth the shot." ROA.1293.

> **D.    The district court applied settled circuit precedent to the facts of Mr. Johnson's case and authorized the *Atkins* claim to proceed.**

After the hearing and considering post-hearing submissions by each party, the district court found that successive proceedings are appropriate in this case. ROA.1040.[16]

> **1.    The district court found that an *Atkins* claim was previously unavailable to Mr. Johnson.**

First, the district court found that Mr. Johnson "has shown that he could not have raised an *Atkins* claim during his initial habeas proceedings." ROA.1051. First, applying this Court's precedents in *Cathey* and *Johnson*, the district court found that Mr. Johnson was essentially prevented from filing an *Atkins* claim before the DSM-5's

---

[16] In doing so, the district court again noted that the Director had used the bulk of his brief "taking issue with various legal matters which the Court has previously resolved, both in the first instance and in a motion for rehearing." ROA.1048 n.6. The district court further noted that the Director had not provided any legal authority supporting his argument that the district court could ignore Fifth Circuit jurisprudence under § 2244. ROA.1049 n.7.

publication, such that any attempt to have raised an *Atkins* claim before that point would have been futile. ROA.1053–54. The district court referenced the rule from *Cathey* and *Johnson* as a "futility exception," ROA.1052, or as a "judicially created exception," ROA.1052 n.10.

Second, even though the DSM-5 was published while Mr. Johnson's initial federal petition was pending, it was not feasible for Mr. Johnson to amend that petition with an *Atkins* claim after the DSM-5 was published for the reasons the court at the time identified in denying Mr. Johnson's previous motion to amend that petition. ROA.1056. The district court therefore found that Mr. Johnson's *Atkins* claim was previously unavailable to him. ROA.1056.

In light of that determination, the district court found that it was not necessary to determine whether Mr. McCann's representation was so deficient that it rendered Mr. Johnson's *Atkins* claim functionally unavailable to him. ROA.1056. It noted, however, that its rationale regarding Mr. McCann's conduct as it pertained to Mr. Johnson's equitable tolling arguments "applie[d] with full force to Mr. McCann's representation immediately after the DSM-V issued." ROA.1057.

**2.    The district court held that "Mr. McCann's representation amounts to an extraordinary circumstance that warrants equitable tolling in this case."[17]**

The district court determined that Mr. Johnson should receive equitable tolling of his *Atkins* claim in light of Mr. McCann's conduct in his case. ROA.1070. The court found that Mr. McCann's "hearing testimony demonstrated that he has a rich understanding of *Atkins* law and mental-health issues in capital cases." ROA.1060. Despite this knowledge, though, Mr. McCann never pursued an *Atkins* claim for Mr. Johnson until 2019. ROA.1060–61. Although Mr. McCann provided the district court with reasons for not doing so, the court nevertheless found that "[s]everal features of Mr. McCann's decision-making cause concern in this case." ROA.1061. The district court identified six areas of concern. ROA.1061–67.

First, the district court faulted Mr. McCann for intentionally withholding a potentially viable claim to the courts. ROA.1061. The district court rejected Mr. McCann's claim that he was waiting for a more favorable forum because "[c]apital attorneys absolutely should not

---

[17] ROA.1067.

withhold viable claims when an avenue of federal relief exists." ROA.1061 (citing *In re Sparks*, 944 F.3d 572, 574 (5th Cir. 2019) (Jones, J., specially concurring)).

Second, the district court rejected Mr. McCann's claim that exhausting an *Atkins* claim would have been futile. It did so because under Supreme Court precedent unfavorable state law does not forgive exhaustion. ROA.1062 (citing *Engle v. Isaac*, 456 U.S. 107, 130 (1982)).

Third, the district court noted that Mr. McCann's "concerns about AEDPA's exhaustion and deferential provisions came at a cost: running afoul of the stringent one-year limitations period." ROA.1062.

Fourth, the district court rejected Mr. McCann's arguments concerning his fear of pursuing an *Atkins* claim due to *Briseno* as contrary to the development of *Moore I* in the Supreme Court. ROA.1062–63. In particular, the court found that it could not "endorse decisions based on the fear of a standard that the federal courts would never honor." ROA.1063. As such, Mr. McCann's decision to withhold the claim did "not hold water after *Moore I*," ROA.1063, yet he still waited to even begin investigating this claim until over a year later when an execution date was set.

Fifth, the district court rejected Mr. McCann's claim that his "subjective beliefs about the viability of an *Atkins* claim without seeking an expert assessment" of whether Mr. Johnson qualified for a diagnosis of intellectual disability excused his failure to bring it. ROA.1063. Despite Mr. McCann's professed familiarity with *Atkins* law, he "lacks the education and training to diagnose intellectual disability" but still failed to retain an expert to assist him in developing this claim. ROA.1065. Thus, on this front Mr. McCann "formulated strategy while only knowing half of the equation." ROA.1065.

Sixth, the district court found that it was "extraordinary" how differently Mr. McCann pursued *Atkins* claims on behalf of other clients compared to his failure to do so for Mr. Johnson. ROA.1066. Comparing Mr. McCann's representation of Mr. Johnson to that of Mr. Moore, the district court found that "[z]ealously litigating an *Atkins* claim on Johnson's behalf (especially after *Moore I*) could have ended in the same result as *Moore*." ROA.1066. Indeed, the district court observed that "[o]n their face, the case for *Atkins* relief seems similar for both Johnson and Moore." ROA.1066. In conclusion, the district court found that "Mr. McCann's representation was an impediment to filing which, until

removed, precluded Johnson from advancing an *Atkins* claim . . . Mr. McCann's representation amounts to an extraordinary circumstance that warrants equitable tolling in this case." ROA.1067.

Mr. Johnson also argued in the district court that the logic of *McQuiggin v. Perkins*, 569 U.S. 383 (2013), could excuse his non-compliance with the statute of limitations based on actual innocence of the death penalty. The district court reserved the question of whether actual innocence of the death penalty may excuse the statute of limitations. ROA.1058–59. It explained that while "[a]s a prima facie matter, Johnson appears to have a strong *Atkins* claim available to him," that evidence "has not yet been tested in adversarial proceedings." ROA.1059. Thus, "[i]t would be premature to find Johnson actually innocent of his death sentence," so the court "reserve[d] the question of whether actual innocence overcomes the procedural bar until further proceedings shed greater light on his *Atkins* claim." ROA.1059.[18]

The final issue the district court considered was whether Mr. Johnson was diligent in pursuing his rights. ROA.1067. In considering

---

[18] The court also rejected Mr. Johnson's claim that Mr. McCann had abandoned Mr. Johnson. ROA.1059.

Mr. Johnson's diligence, the district court cited the prima facie showing of intellectual disability and found that "[w]ith his level of functioning as described in the exhibits to the federal petition, it is unreasonable to expect that Johnson could litigate an *Atkins* claim on his own, much less one based on the distinctions brought by changes in the law and the DSM-V." ROA.1068. Thus, "[u]nder the fact-dependent circumstances of this case, the Court [found] that Johnson has shown the requisite diligence to merit equitable tolling." ROA.1068.

At bottom, the district court concluded that "[c]ourts cannot countenance any litigation strategy based on withholding grounds for relief." ROA.1069. Here, Mr. Johnson did not have a viable *Atkins* claim at trial, but that changed at the DSM-5's publication, which happened "at a disadvantageous time" for Mr. Johnson. ROA.1069. The district court concluded that "[a] zealous attorney should have brought Johnson's *Atkins* claim to the federal court many years ago" and that "Johnson's claim deserves to be heard." ROA.1070. Accordingly, the district court found that Mr. Johnson had complied with AEDPA's requirements for consideration of his successive petition. ROA.1070.

**E.    The district court certified a single question for appeal under 28 U.S.C. § 1292(b), which was whether there can be judicially created exceptions to 28 U.S.C. § 2244(b)(2)(A).**

Less than a month after the district court allowed Mr. Johnson's petition to proceed, the Director filed a motion to certify that order pursuant to 28 U.S.C. § 1292(b). ROA.1076. The Director sought to certify three questions: first, "[w]hether there can be judicially created exceptions to 28 U.S.C. § 2244(b)(2)(A)"; second, "[w]hether an attorney's intentional, strategic decisions to not raise a claim he deemed meritless can ever constitute extraordinary circumstances"; and third, "[w]hether a prima facie showing of intellectual disability exempts a petitioner from the diligence requirement of equitable tolling." ROA.1079–80. The district court granted the motion as it pertained to the first question, and this Court also allowed the appeal to proceed. ROA.1122, 1124.

## SUMMARY OF THE ARGUMENT

This Court should exercise its discretion to consider only the question certified by the district court—i.e., whether there can be judicially-created exceptions to § 2244(b)(2)(A). *See, e.g.*, *United States ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*, 843 F.3d 1033, 1041 (5th Cir. 2016). That question has a straightforward resolution, as this

Court can dispose of the Director's argument based on the rule of orderliness. That rule provides that "one panel of [this] court may not overturn another panel's decision, absent an intervening change in the law." *Austin v. Davis*, 876 F.3d 757, 778 (5th Cir. 2017). The Director can point to no intervening change in the law, whether in the Supreme Court or by statute, that could justify this panel refusing to adhere to prior decisions by this Court, which the Court in this case has already deemed "precedential[]." *Johnson*, 935 F.3d at 294.

Second, this Court can resolve the certified question out of hand because this Court did not create any judicial exceptions to § 2244(b). A common-sense reading of the district court's order as a whole shows that the district court faithfully applied this Court's precedential decisions about how to interpret the term "previously unavailable" in § 2244(b)(2)(A). Although some of the language in the district court order may suggest that it thought this Court was creating an exception, it plainly applied the relevant rule correctly.

The precedent at issue here—both *Cathey* and *Johnson*—concerns the proper interpretation of the term "previously unavailable" and when a petitioner can make a prima facie case that a claim was not previously

available to him. The Director now claims that this Court created a judicial exception to a jurisdictional statute—not based on any developments in this Court, the Supreme Court, or Congress, but rather based on a phrase utilized by the district court in applying this Court's precedent. But neither this Court nor the district court somehow exempted Mr. Johnson from the jurisdictional requirement of § 2244. Rather, this Court interpreted a statutory term and the district court adhered to that interpretation. This Court should affirm its decisions in *Cathey* and *Johnson* and reject the Director's arguments to the contrary.

Even if this Court decides to revisit its decisions in *Cathey* and *Johnson*, both cases were correctly decided and should be affirmed. Aside from pointing to language used by the district court in its October 2022 order, the Director can point to no indication that this Court created any judicial exceptions to § 2244(b)(2)(A). Rather, the Director curiously argues that an authorization panel is not bound by prior decisions made in the authorization context, again with no basis. As discussed in detail below, none of the Director's arguments to the contrary have merit. The Director fails to cite any law that would suggest the same words in a

statute can mean different things depending on whether it is in the authorization context or after the case is in the district court.

Should this Court choose to exercise its discretion and consider whether the district court's equitable tolling decision was proper, neither of the Director's points have merit. At bottom, both of the Director's claims rest on a similar misapprehension of both the equitable tolling standard and the district court's application of it. First, the Director seeks to craft a *per se* rule that an attorney's so-called "strategic decisions" can never constitute an "extraordinary circumstance" warranting equitable tolling. Br. at 16. Such a contention, however, runs directly afoul of the Supreme Court's admonition in *Holland v. Florida* that an "overly rigid *per se* approach" is improper in the equitable tolling context. 560 U.S. 631, 653 (2010). Second, the Director incorrectly claims that with respect to diligence, the district court categorically exempted people with an intellectual disability from having to demonstrate diligence. Br. at 17. But as evidenced in the district court's order, the district court merely applied *Holland* and its progeny by evaluating the specific facts of Mr. Johnson's case.

Indeed, the Supreme Court has made clear that equitable tolling must be considered on a "case-by-case basis" and demands "flexibility" in its application. *Holland*, 560 U.S. at 649–50 (citations and quotations omitted). The district court did so here. First, under the unique facts of this case, the district court found that Mr. McCann's representation constituted an "extraordinary circumstance" warranting equitable tolling. ROA.1067. Second, the district court found that "[u]nder the fact-dependent circumstances of this case"—which included Mr. Johnson's level of functioning as well as the nuanced and complicated legal issue presented—that Mr. Johnson had "shown the requisite diligence to merit equitable tolling." ROA.1068. Rather than contend with those determinations, the Director attempts to recast the district court's findings as either failing to apply essentially a *per se* rule or impermissibly applying a *per se* rule. As demonstrated herein, however, the district court did neither of these things. The Director therefore cannot demonstrate that the district court's equitable tolling ruling constituted an abuse of discretion. *See Mathis v. Thaler*, 616 F.3d 461, 473–74 (5th Cir. 2010).

## ARGUMENT

## I. This Court should exercise its discretion to consider only the question certified by the district court.

At the outset, because this is an interlocutory appeal, this Court can exercise its discretion to consider only the question certified by the district court. *See Simoneaux*, 843 F.3d at 1041. Here, the district court certified only the Director's question whether there can be judicially created exceptions to 28 U.S.C. § 2244(b)(2)(A) and declined to certify the Director's other two questions regarding equitable tolling. ROA.1079–80. Accordingly, this Court should limit its consideration of this appeal to only the certified question. The Director had the opportunity to frame his certified question as he wanted and should not now be allowed to expand that question into different areas.

Once this Court has certified an appeal pursuant to 28 U.S.C. § 1292(b), it has the discretion to "address any issue fairly included" in the order certified for appeal. *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996). But reviewing *all* fairly-included issues is "a matter of judicial discretion, not duty"—courts are not "required to go beyond the questions certified in an interlocutory appeal." *Gonzales v. CoreCivic, Inc.*, 986 F.3d 536, 540 (5th Cir. 2021) (Ho, J., concurring); *see*

*Castellanos–Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 399 (5th Cir. 2010) (noting that an appellate court has discretion to review issues other than the certified questions under § 1292(b)). In particular, "where an issue is not fully developed in the district court, [this Court] may decline to reach it." *United States v. Caremark, Inc.*, 634 F.3d 808, 811 n.1 (5th Cir. 2011).

Much of the Director's briefing strays far beyond the scope of the certified question. This Court should decline the Director's suggestion to, for example, "only decide what binding effect, if any, [*Cathey* and *Johnson*] have on the second gateway inquiry." Br. at 37–38. That is not the question for which the Director sought certification. Even if this Court chooses to address this question, as the district court noted, the Director "has not supported this theory with any precedent." ROA.1049 n.7. Likewise, the Director has not cited to any precedent in this interlocutory appeal that would allow a district court "to ignore the Fifth Circuit's interpretation of the law, regardless of whether it was created in the 'authorization context' or after plenary review." ROA.1049 n.7. Accordingly, this Court may appropriately decline the Director's request to speak to this argument—and in any event, as discussed below, the

Director is incorrect as to when this Court's statutory interpretation and legal reasoning binds later decisions.

This Court should also decline to revisit its prior legal determination that *Atkins* could—if established during the district court's review—be a new constitutional rule made retroactive to Mr. Johnson. *See Johnson*, 935 F.3d at 294. The Director spends several pages directly disputing this Court's prior determination that "[w]hat opens the door for Johnson is the *Cathey* decision, which has precedentially determined that it is correct to equate legal availability with changes in the standards for psychiatric evaluation of the key intellectual disability factual issues raised by *Atkins*." *Compare Johnson*, 935 F.3d at 294, *with* Br. at 21–26. Although the Director claims that "[i]t cannot be credibly argued that, by the time Johnson filed his initial petition, *Atkins* was 'new,'" Br. at 21, this Court already considered and rejected these arguments, *Johnson*, 935 F.3d at 293–94. This Court should decline to give the Director a second bite at the apple on this point.

This Court should likewise decline to decide the questions regarding equitable tolling that the district court declined to certify—or anything beyond the narrow question certified for appeal regarding

judicial exceptions to § 2244(b)(2)(A). Although the Director attempts to frame each of these issues as invoking legal questions, as discussed in Section IV, *infra*, even a cursory examination of the certified order demonstrates that the focus of the Director's complaint pertains to the district court's application of the equitable tolling standard.

This Court should also refrain from reaching the Director's questions regarding equitable tolling now because regardless of how this Court resolves them, remand to the district court would be required. In addition to Mr. McCann's conduct, Mr. Johnson argued that his claim is not untimely based on the logic of *McQuiggin v. Perkins*, 569 U.S. 383 (2013), as he is actually innocent of the death penalty. ROA.331–32. This question remains unresolved in this circuit. *Tamayo v. Stephens*, 740 F.3d 986, 990 (5th Cir. 2014)). The district court explicitly "reserved the question" because at this point no final determination has been made regarding whether Mr. Johnson is intellectually disabled. ROA.1059. Thus, even if the Director is correct on the law—a point that Mr. Johnson disputes—that would not require dismissal of Mr. Johnson's petition, as the district court would still have to resolve this open question.

**II.  The rule of orderliness precludes the relief sought by the Director here, namely, the overruling of *Cathey* and *Johnson*.**

Although the Director attempts to frame his appeal by faulting errors purportedly made by the district court, the gravamen of the Director's complaint lies in the core of this Court's rulings in *Cathey* and *Johnson*. *See, e.g.*, Br. at 1, 16, 18. The Director admits as much in his brief in stating that "[t]he Director believes that the *Cathey* and *Johnson* decisions are wrongly decided." Br. at 37; *see id.* at 44 (describing this Court's precedents as "error"). As the bulk of the Director's argument makes clear, the Director ultimately seeks reversal of *Johnson*, and consequently, *Cathey*. *See generally* Br. at 28–44.

The Director's remedy is foreclosed by this Court's rule of orderliness. Under this rule, "a panel may not overturn a controlling precedent absent an intervening change in law, such as by a statutory amendment, or the Supreme Court, or our en banc court." *Vaughan v. Anderson Reg'l Med. Ctr.*, 849 F.3d 588, 591 (5th Cir. 2017) (citations and quotations omitted). "Indeed, even if a panel's interpretation of the law appears flawed, the rule of orderliness prevents a subsequent panel from declaring it void." *Id.* (citations and quotations omitted). Here, as

discussed below in detail, *Cathey* and *Johnson* were correctly decided and there has been no intervening law—whether by the Supreme Court or by statute—that calls either case or the reasoning underlying them into question.

To the extent the Director relies on *Shinn v. Martinez Ramirez*, 142 S. Ct. 1718 (2022), as an intervening Supreme Court case that warrants revisiting *Cathey* and *Johnson*, the Director is wrong. Whether an intervening change warrants revisiting an earlier panel decision depends on whether such "intervening changes in law undermine its continued vitality." *Vaughan*, 849 F.3d at 591. "For a Supreme Court decision to change our circuit's law, it must unequivocally overrule prior precedent." *Martinelli v. Hearst Newspapers, L.L.C.*, 65 F.4th 231, 234 (5th Cir. 2023) (cleaned up). As the Director notes, "*Martinez Ramirez* dealt with § 2254(e)(2)," and not § 2244(b)(2)(A). Br. at 41. Nothing in *Martinez Ramirez* pertains to the certified question, which whether there can be judicial exceptions to § 2244(b)(2)(A). *Cf. Mullis v. Lumpkin*, 70 F.4th 906, 910 (5th Cir. 2023) ("[A]t issue in *Ramirez* was the use of evidence developed in a *Martinez* hearing to assess the defendant's underlying

merits claim of ineffective assistance of *trial* counsel."). And as described in detail below, this Court has not read an exception to that statute.

In sum, under this Court's rule of orderliness, this panel is bound to follow *Cathey* and *Johnson*.

### III.   The certified question can be easily resolved because this Court has not created any judicial exceptions to § 2244(b)(2)(A).

*Cathey* and *Johnson* established the proper framework for determining when a claim is "previously unavailable" under 28 U.S.C. § 2244(b)(2)(A) in this Circuit. Those cases, as a matter of statutory interpretation, established what that phrase means in this Circuit. They did not create a judicial exception to the statute. Instead, this precedent provides a way to show that the statute itself is met under limited circumstances.

As *Cathey* itself noted, "[t]his Court has had few occasions to analyze whether a rule of constitutional law was 'previously unavailable' for purposes of a successive habeas petition when the pertinent Supreme Court decision was published at the time of the petitioner's initial habeas petition." *Cathey*, 857 F.3d at 229. When a Supreme Court decision had been published while an initial petition was pending, this Court first

determines as a prima facie matter whether it was feasible for the petitioner to amend his petition to include the claim. *Id.* at 229–31; *see Johnson*, 835 F.3d at 293. But even if the claim was technically available, this Court has held that "a claim must have some possibility of merit to be considered available." *Cathey*, 857 F.3d at 232. This Court further made clear that, in light of the framework of § 2244(b), its evaluation pursuant to this framework was only "'tentative'" and "is to be followed by the district court's 'thorough review.'" *Id.*

The Director claims that the foregoing actually "read a judicially created equitable exception into the statute." Br. at 15. Of course, neither *Cathey* nor *Johnson* have any language that indicates or even implies that they have taken this action. Indeed, neither opinion characterizes its holding as creating any kind of exception, let alone an "equitable" one. *Cf. In re Bower*, 612 F. App'x 748, 752 (5th Cir. 2015) (rejecting petitioner's argument that this Court's equitable powers "allow[s] a movant to file a second or successive habeas petition when explicitly barred by the statute").

Rather, it appears that the Director's argument depends not on what this Court has previously held, but instead on two phrases used by

the district court: "*futility* exception" and "judicially created exception." *Compare* Br. at 15, *with* ROA.1052 & n.10. But it is abundantly clear when the order is read as a whole that the district court's choice of wording cannot transform this Court's statutory interpretation into some kind of equitable exception. And the Supreme Court has "long stressed that the language of an opinion is not always to be parsed as though we were dealing with the language of a statute." *Brown v. Davenport*, 596 U.S. 118, 141 (2022) (cleaned up).

The Director advances six reasons why he thinks this Court read an extra-statutory exception into § 2244(b)(2)(A), none of which has merit. *See* Br. at 27. First, the Director's claim that "allowing petitioners to rely on extra-judicial sources to bootstrap a belated *Atkins* claim" effectively nullifies the statutory requirement that a claim rely on "a new rule of constitutional law" is irreconcilable with the actual language contained in *Cathey* and *Johnson*. *See* Br. at 28. Neither of those cases suggested that a publication such as the DSM-5 would be sufficient on its own to allow a second or successive federal petition; indeed, each of those cases recognized that *Atkins* was the new rule of constitutional law on which the petitioners relied. *See Cathey*, 857 F.3d at 227; *Johnson*, 935 F.3d at

292.[19] Rather, consideration of an "extra-judicial source" such as the DSM-5 is relevant only to whether, in this context, an *Atkins* claim that previously had no possibility of merit now has "some possibility of merit." *Cathey*, 857 F.3d at 232. Thus, nothing in *Cathey* or *Johnson* reads the words "new rule of constitutional law" out of the statute.

Second, the Director is incorrect when he asserts that this Court has conflated the "new-rule prong" and the "factual-predicate prong" in § 2244(b). *See* Br. at 28–31. At the outset, this Court already rejected an argument that Mr. Johnson advanced at the authorization stage that his intellectual disability claim *also* satisfied the factual-predicate prong of § 2244(b). *Johnson*, 935 F.3d at 291 n.1. Thus, it strains credulity to assert that this Court's rulings conflated the separate predicates in § 2244(b). More fundamentally, however, the Director's assertion ignores the Supreme Court's admonition in *Hall* that the legal determination of intellectual disability "is informed by the medical community's diagnostic

---

[19] Although the Director cites *Hall v. Florida*, 572 U.S. 701 (2014), for the proposition that legal determinations are distinct from medical determinations, Br. at 28, the quotation the Direct excerpts omits crucial context. The full quote, which appears in the body of the opinion and not to the syllabus cited by the Director, states: "The legal determination of intellectual disability is distinct from a medical diagnosis, *but it is informed by the medical community's diagnostic criteria. Atkins* itself points to the diagnostic criteria employed by psychiatric professionals." *Hall*, 572 U.S. at 721 (emphasis added).

framework," which "*Atkins* itself points to." *Hall*, 572 U.S. at 721. Thus, far from "ignoring" the distinction between § 2244(b)(2)(A) and § 2244(b)(2)(B), *Cathey* and *Johnson* faithfully applied the Supreme Court's treatment of the diagnostic criteria.

Third, the Director is also incorrect that *Cathey* and *Johnson* read out the statutory requirement that the new rule be made "retroactive to cases on collateral review." Br. at 31. Both *Cathey* and *Johnson* are premised on constitutional claims "made retroactive to cases on collateral review by the Supreme Court." *Cathey*, 857 F.3d at 227; *Johnson*, 937 F.3d at 292. In addition, the Director's claim that § 2244(b)(2)(A) does not allow petitioners to raise claims that were available to them at the time of their first petition conflates the concept of retroactivity with that of prior unavailability. *See* Br. at 32.

Fourth, the Director is mistaken in asserting that this Court (indeed, this panel) has ignored the fact that it is the province of the Supreme Court to determine whether a case is retroactive. *See* Br. at 33. In fact, both *Cathey* and *Johnson* expressly recognize this point. *Cathey*, 857 F.3d at 227; *Johnson*, 937 F.3d at 292. Nor does *Tyler v. Cain*, 533 U.S. 656 (2001), assist the Director—indeed, that case undermines the

central feature of the Director's argument, which is that courts cannot "judicially amend" jurisdictional statutes. At issue in *Tyler* was also § 2244(b)(2)(A) and the meaning of the word "made" in that statute. *Tyler*, 533 U.S. at 662. Interpreting that statute, the Supreme Court determined that "[b]ased on the plain meaning of the text read as a whole, we conclude that 'made' means 'held' and, thus, the requirement is satisfied only if this Court has held that the new rule is retroactively applicable to cases on collateral review." *Id.* In other words, *Tyler* makes clear that a court may interpret a term in a jurisdictional statute, just as this Court did in *Cathey* and *Johnson*.

Fifth, the Director's claim that this Court read "previously unavailable" in a vacuum and divorced from the rest of the statute's text is baseless. *See* Br. at 34–35. This Court in *Cathey* clearly explained why a claim needed "some possibility of merit to be considered available":

> In the same way we would not expect someone who, based on evidence, believed he was nineteen-years-old at the time of his crime to bring a *Roper* claim, we cannot expect someone who, based on evidence, believed his IQ was 77 to bring an *Atkins* claim two years after *Atkins* was decided in a state that had declared 70 as the benchmark IQ score, even accounting for a five-point margin of error.

*Cathey*, 857 F.3d at 232. Although the Eleventh Circuit may have reached a different conclusion in *In re Bowles*, 935 F.3d 1210, 1218 (11th Cir. 2019), the Director fails to explain why this Court should follow an out-of-circuit case that expressly rejected this Court's holdings in *Cathey* and *Johnson. Cf. Bowles*, 935 F.3d at 1216–17. In sum, as this Court has already held, interpreting "available" to require "some possibility of merit" gives the word *unavailable* effect; it does not render the other words in the statute superfluous. *See Cathey*, 857 F.3d at 232.

Sixth, and finally, the Director is incorrect in arguing that this Court has imputed two different meanings to the term "previously unavailable." *See* Br. at 36. Rather, as *Cathey* makes clear, whether a claim was "previously unavailable" entails looking at two distinct, but related, inquiries. *Cathey*, 857 F.3d at 229–32. This is because the Court recognized "the potential for a gray area of previous unavailability despite technical availability." *Id.* at 230. Thus, the Court will both look to see if it was feasible to amend an initial petition to include the new claim, *and* to see whether the new claim had a possibility of merit such that it could be considered "available." *Id.* at 229–32. Far from giving different meanings to the same words in the statute, this Court merely

clarified what it means for something to be "available" under § 2244(b)(2)(A).

Finally, the Director's assertion that authorization decisions interpreting statutory language are not binding on this Court or district courts reviewing the same statutory words has no basis in this Court's or Supreme Court precedent. *See* Br. at 37–41. That is not surprising, as the Director's argument would lead to absurd results. It would create a scenario where an authorization panel could be compelled by precedent to authorize the district court to consider a successive petition, but then the district court—relying on a different interpretation of the same phrase—would be bound to dismiss.

Mr. Johnson does not dispute the fact that this Court's authorization decisions are tentative and preliminary. *See id.* at 38. But as the district court noted, the Director does not provide any reason why later courts would not be bound by the legal reasoning articulated in authorization decisions. *See* ROA.1049 n.7. Indeed, the "tentative" nature of authorization decisions means only that the district court has the chance to determine whether or not a petitioner has actually proved

that he satisfies the requirements in § 2244(b)(2)(A), as opposed to making a prima facie showing. *See Cathey*, 857 F.3d at 234.

In sum, none of the arguments proffered by the Director warrant revisiting this Court's holdings in *Cathey* and *Johnson*.

## IV. The Director's arguments on equitable tolling cannot be reconciled with Supreme Court precedent or the district court's actions.

This Court should limit its current review to the certified question, which does not relate to equitable tolling. The district court merely applied binding precedent to the facts of Mr. Johnson's case, and the Director's attempt to get the Court to craft additional rules in this area is foreclosed by Supreme Court precedent. Furthermore, even if this Court elects to address these questions now, remand to the district court will be necessary because the district court explicitly "reserved the question" of whether actual innocence of the death penalty could also operate to excuse the timing of Mr. Johnson's filing because at this point no final determination has been made regarding whether Mr. Johnson is intellectually disabled. ROA.1059.

A.    **The Director's claim that an attorney's allegedly "strategic" decision can never amount to an extraordinary circumstance is foreclosed by Supreme Court precedent.**

After evaluating the totality of Mr. McCann's actions in representing Mr. Johnson, the district court found that Mr. McCann's representation constituted an "extraordinary circumstance" warranting equitable tolling for Mr. Johnson. ROA.1067. In disputing this, the Director claims that Mr. McCann made a "strategic decision" not to raise an *Atkins* claim and that such a decision may never support a finding of equitable tolling. *See* Br. at 51–54. This argument, however, represents the type of overly rigid approach to an equitable determination that the Supreme Court rejected in *Holland*.

*Holland* established that AEDPA's statute of limitations is subject to equitable tolling under appropriate circumstances. *Holland*, 560 U.S. at 645. The Supreme Court's decision was grounded in the fact that equitable principles have traditionally governed the substantive law of habeas corpus, and Congress enacted AEDPA with this principle in mind. *Id.* at 646. Thus, a court may toll AEDPA's statute of limitations where 1) some extraordinary circumstance stood in a petitioner's way of timely

filing and 2) the petitioner acted reasonably diligently in pursuing his rights. *Id.* at 649, 653.

In determining what constitutes an "extraordinary circumstance" that warrants tolling the statute of limitations, the Supreme Court has cautioned the need for "flexibility" and to avoid "mechanical rules." *Id.* at 650 (citations and quotations omitted). "The 'flexibility' inherent in 'equitable procedure' enables courts 'to meet new situations [that] demand equitable intervention, and to accord all the relief necessary to correct . . . particular injustices.'" *Id.* (quoting *Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 248 (1944)). Thus, although courts in equity "exercise judgment in light of prior precedent," they do so "with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case." *Id.*

This Court has further instructed that "'[c]ourts must consider the individual facts and circumstances of each case in determining whether equitable tolling is appropriate.'" *Mathis*, 616 F.3d at 474 (quoting *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002)); *see Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999) (noting that equitable tolling is "a discretionary doctrine that turns on the facts and circumstances of

a particular case"). To that end, equitable tolling "'does not lend itself to bright-line rules.'" *Jackson v. Davis*, 933 F.3d 408, 410 (5th Cir. 2019) (quoting *Fisher*, 174 F.3d at 713). It is equally well established that while "garden variety claims of misconduct" by counsel does not support equitable tolling, "far more serious instances of attorney conduct may." *Id.* at 651–52; *see Christeson v. Roper*, 574 U.S. 373, 378 (2015) ("Tolling based on counsel's failure to satisfy AEDPA's statute of limitations is available only for 'serious instances of attorney misconduct.'" (quoting *Holland*, 560 U.S. at 651–52)).

This Court reviews a district court's equitable tolling determination for abuse of discretion. *Manning v. Epps*, 688 F.3d 177, 182 (5th Cir. 2012). Here, the district court followed the approach set forth by the Supreme Court and this Court in evaluating Mr. Johnson's claim to equitable tolling. After identifying the applicable precedents, the district court noted that "[s]everal features of Mr. McCann's decision-making cause concern in this case." ROA.1061. The crux of the district court's focus, however, was the fact that Mr. Johnson did not have a viable *Atkins* claim at trial; upon meeting Mr. Johnson, Mr. McCann believed that Mr. Johnson was intellectually disabled; Mr. McCann was deeply

familiar with the change in diagnostic criteria set forth in the DSM-5; yet, despite all this, Mr. McCann failed to raise an *Atkins* claim on behalf of Mr. Johnson based on his guess that Texas courts might defy the Supreme Court and his hope that one day, a more favorable standard might eventually assists Mr. Johnson. ROA.1060–61, 1063, 1069.

The district court also considered and rejected each of Mr. McCann's proffered reasons for failing to raise an *Atkins* claim on behalf of Mr. Johnson. Although Mr. McCann claimed that he feared exhausting an *Atkins* claim in state court would potentially foreclose federal relief, the district court noted that the "Supreme Court has found that unfavorable state law does not forgive exhaustion even when the disputed claim 'was unacceptable to that particular court at that particular time.'" ROA.1062 (quoting *Engle*, 456 U.S. at 130 n.35). The district court also rejected Mr. McCann's purported fear that pursuing an *Atkins* claim in state court would doom federal review under AEDPA as not viable after the Supreme Court decided *Moore I*. ROA.1063. Further supporting the district court's findings was Mr. McCann's lack of investigation into Mr. Johnson's intellectual disability claim until Mr. Johnson's execution date was set. ROA.1063–65. In other words, "Mr.

McCann formulated strategy while only knowing half of the equation." ROA.1065.

What made Mr. McCann's conduct in Mr. Johnson's case all the more striking, though, was the contrast in zealousness in which Mr. McCann pursued an *Atkins* claim on behalf of Bobby Moore and yet failed to do so for Mr. Johnson. *See* ROA.1065–66. "While [Mr. McCann] aggressively fought against the *Briseno* standard in *Moore*, Mr. McCann felt hobbled by the *Briseno* standard in Mr. Johnson's case." ROA.1066. Indeed, "[z]eously litigating an *Atkins* claim on Johnson's behalf (especially after *Moore I*) could have ended in the same result as in *Moore*." ROA.1066. Ultimately, the district court found that "the contrast between Mr. McCann's admirable representation in *Moore* which forced Texas into compliance with Supreme Court standards stands in contrast to his inaction in this case." ROA.1069.

Thus, after considering the detailed history of Mr. McCann's representation of Mr. Johnson, the district court concluded that "Mr. McCann's choice not to litigate a meritorious claim on behalf of his death sentence[d] client . . . had the functional effect of forfeiting any federal review of Mr. Johnson's *Atkins* claim." ROA.1067 (quotations omitted).

And "[c]apital attorneys absolutely should not withhold viable claims when an avenue of federal relief exists." ROA.1061. Thus, "Mr. McCann's representation amounts to an extraordinary circumstance that warrants equitable tolling in this case." ROA.1067.

The foregoing demonstrates the two main flaws in the Director's arguments to the contrary. First, the Director is incorrect in arguing that the main basis for the district court's decision on equitable tolling was Mr. McCann's "strategic decisions." Br. at 54.[20] Rather, the district court clearly laid out why Mr. McCann's conduct in Mr. Johnson's case cannot be labeled as "strategic." Even if this Court considers this a "strategic decision," the Director's assertion that a strategic decision may *never* form the basis of equitable tolling is belied by both the Supreme Court's and this Court's clear precedent that equitable tolling must be considered on a flexible, case-by-case basis. *See Holland*, 560 U.S. at 650; *Mathis*, 616 F.3d at 474. Indeed, in *Holland* itself the Supreme Court struck down the Eleventh Circuit's test for equitable tolling based on attorney

---

[20] In arguing that a strategic decision may never form the basis of an equitable tolling determination, the Director primarily relies on language in *Strickland v. Washington*, 466 U.S. 668 (1984). *See* Br. at 49. That case, however, concerns the appropriate standard to review an ineffective-assistance-of-counsel claim; it does not speak to what a court sitting in equity may consider in determining whether equity supports tolling the statute of limitations.

misconduct because it "erroneously relied on an overly rigid *per se* approach." *Holland*, 560 U.S. at 653.[21]

Second, the Director seeks to characterize Mr. McCann's failure to raise an *Atkins* claim as mere attorney error or neglect, which does not constitute an extraordinary circumstance warranting equitable tolling. Br. at 47–51. But neither the district court nor Mr. McCann himself claimed that Mr. McCann's conduct in Mr. Johnson's case was either a mistake or the result of neglect. As explained in detail above, Mr. McCann's testimony was the opposite: he told the district court that he knew about both the legal and factual bases for the claim but yet deliberately chose not to advance it. Thus, this argument fails as well.

In sum, the district court's determination that Mr. McCann's representation constituted an extraordinary circumstance warranting equitable tolling was grounded in this Court's and the Supreme Court's precedent.

---

[21] For the same reason, the Director's claim that the district court adopted a bright-line rule that capital attorneys may never withhold viable claims is likewise incorrect. *See* Br. at 49. Although the district court included this observation in finding that Mr. Johnson was entitled to equitable tolling, the foregoing demonstrates that several factors—not one bright-line rule—contributed to the district court's findings.

**B.    The Director's claim that the district court categorically found that persons with intellectual disability are exempt from showing diligence is belied by the certified order and by prior orders below.**

Even if this Court considers the Director's argument that the district court relieved Mr. Johnson of the burden of showing diligence for purposes of equitable tolling, this claim lacks merit. The district court found that "[u]nder the fact-dependent circumstances of this case, the Court finds that Johnson has shown the requisite diligence to merit equitable tolling." ROA.1068. The court so found because Mr. Johnson had made a prima facie showing of intellectual disability; [22] "it is unreasonable to expect that Johnson could litigate an *Atkins* claim on his own, much less one based on the distinctions brought by changes in the law and the DSM-V"; and because Mr. Johnson's "attorneys sought leave to file a successive federal petition soon after their appointment." ROA.1068; *see* ROA.1067 (noting that equitable tolling requires "reasonable diligence," not "maximum diligence" (quoting *Holland*, 560 U.S. at 653)). Thus, far from declaring that persons with intellectual

---

[22] Although the Director claims that the district court should have deferred to the TCCA's rejection of Mr. Johnson's intellectual disability claim under 28 U.S.C. § 2254(e)(1), the Director fails to identify any reason why deference is owed on this point in the authorization context for purposes of equitable tolling. *See* Br. at 56.

disability are exempt from showing diligence, the district court merely "consider[ed] the individual facts and circumstances of each case in determining whether equitable tolling is appropriate." *Mathis*, 616 F.3d at 473–74.

Rather than grapple with what the district court actually did, the Director instead erroneously claims that the district court held "that petitioners who make a prima facie showing of intellectual disability are effectively exempt from having to show diligence." Br. at 54. But as the foregoing demonstrates, that is not what the district court did. In fact, the district court previously rejected Mr. Johnson's argument that his intellectual disability alone warranted equitable tolling. *See* ROA.485 n.13.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's October 2022 order allowing Mr. Johnson's intellectual disability claim to proceed in the district court.

Respectfully submitted,

DATE: October 23, 2023

JASON D. HAWKINS
Federal Public Defender

*/s/ Jeremy Schepers*
Jeremy Schepers (TX 24084578)
Supervisor, Capital Habeas Unit
jeremy_schepers@fd.org

*/s/ Kathryn Hutchinson*
Kathryn Hutchinson (TX 24078707)
Assistant Federal Public Defender
katy_hutchinson@fd.org

Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, TX 75202
(214) 767-2746
(214) 767-2886 (fax)

*Counsel for Appellee*
*Dexter Darnell Johnson*

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2023, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Fifth Circuit using the CM/ECF system, which will send notification of such filing to all counsel in this case at their e-mail addresses on file with the Court.

*/s/ Jeremy Schepers*
Jeremy Schepers

## CERTIFICATE OF COMPLIANCE

I certify that (1) this Brief was prepared in 14-point Century Schoolbook font using Microsoft Word software, (2) this Brief is 11,708 words, excluding the parts of the Brief exempted by the rules of court, and (3) this Brief has been scanned for viruses and the Brief is virus-free. Counsel further certifies that any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13.

*/s/ Jeremy Schepers*
Jeremy Schepers