# In the United States Court of Appeals for the Fifth Circuit

DEXTER JOHNSON,

*Petitioner-Appellee,*

*v.*

ERIC GUERRERO, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

*Respondent-Appellant.*

On Certified Interlocutory Appeal from the United States District Court
for the Southern District of Texas, Houston Division

## RESPONDENT-APPELLANT'S PETITION FOR REHEARING EN BANC

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

WILLIAM R. PETERSON
Solicitor General
William.Peterson@oag.texas.gov

WILLIAM F. COLE
Principal Deputy Solicitor General

CAMERON FRASER
Assistant Solicitor General

GWENDOLYN S. VINDELL
Assistant Attorney General

*Counsel for Respondent-Appellant*

## Certificate of Interested Persons

No. 23-70002

### Dexter Johnson,

*Petitioner-Appellee,*

*v.*

### Eric Guerrero, Director, Texas Department of Criminal Justice, Correctional Institutions Division,

*Respondent-Appellant.*

Under the fourth sentence of Fifth Circuit Rule 28.2.1, Respondent-Appellant, as a governmental party, need not furnish a certificate of interested persons.

/s/ William R. Peterson
William R. Peterson

*Counsel of Record for Respondent-Appellant*

# Table of Contents

Page

Certificate of Interested Persons ............................................................i

Table of Authorities ..........................................................................iii

Introduction and Rule 40(b) Statement.................................................. 1

Issues Meriting En Banc Consideration ................................................. 4

Statement of the Case ........................................................................ 5

Argument....................................................................................... 10

    I.   The Panel's Treatment of *Atkins* as a "New Rule" Conflicts with Decisions of the Supreme Court and this Court..................................... 10

    II.  The Panel's Interpretation of "Previously Unavailable" Entrenches a Circuit Split and Presents a Question of Exceptional Importance. ........... 13

    III. These Issues Warrant Rehearing En Banc. ............................................. 15

Conclusion..................................................................................... 17

Certificate of Service......................................................................... 18

Certificate of Compliance .................................................................. 18

# Table of Authorities

**Page(s)**

**Cases:**

*Atkins v. Virginia,*
536 U.S. 304 (2002) .................................................................*passim*

*In re Bowles,*
935 F.3d 1210 (11th Cir. 2019) ........................................2, 13, 14, 15

*Cathey v. Guerrero,*
No. 4:15-CV-2883 (S.D. Tex.) ...............................................7

*Cathey v. State,*
992 S.W.2d 460 (Tex. Crim. App. 1999) .................................6

*In re Cathey,*
857 F.3d 221 (5th Cir. 2017) ..................... 6, 7, 9, 12, 13, 15, 17

*Chaidez v. United States,*
568 U.S. 342 (2013) ........................................................ 2, 11

*Cockerham v. Cain,*
283 F.3d 657 (5th Cir. 2002) .................................................10

*Edwards v. Vannoy,*
593 U.S. 255 (2021) ............................................................10

*In re Halprin,*
788 F. App'x 941 (5th Cir. 2019) .................................11, 15, 16

*Harrington v. Richter,*
562 U.S. 86 (2011) ..............................................................15

*Johnson v. State,*
No. AP-75,749, 2010 WL 359018 (Tex. Crim. App. Jan. 27, 2010) .....................5

*Johnson v. Stephens,*
617 F. App'x 293 (5th Cir. 2015) ..........................................5

*Johnson v. Stephens,*
No. CIV.A. H-11-2466, 2013 WL 4482865 (S.D. Tex. Aug. 19, 2013) ...............5

*In re Johnson,*
935 F.3d 284 (5th Cir. 2019) .................... 1, 6, 7, 12, 14, 15, 17

*Ex parte Johnson,*
No. WR-73,600-01, 2010 WL 2617804 (Tex. Crim. App. June 30, 2010) ................5

*Ex parte Johnson*,
No. WR-73,600-02, 2019 WL 1915204 (Tex. Crim. App. Apr. 29, 2019) ............................................................................................ 6

*Munoz v. United States*,
28 F.4th 973 (9th Cir. 2022) ........................................................ 13

*Rivers v. Guerrero*,
605 U.S. 443 (2025) ...................................................................... 1

*In re Sparks*,
939 F.3d 630 (5th Cir. 2019) ...................................................... 16

*Teague v. Lane*,
489 U.S. 288 (1989) ..................................................................... 11

*Tyler v. Cain*,
533 U.S. 656 (2001) ..................................................................... 10

*United States v. Vargas-Soto*,
35 F.4th 979 (5th Cir. 2022) ................................................... 2, 10

*Williams v. Cain*,
229 F.3d 468 (5th Cir. 2000) ...................................................... 10

**Constitutional Provisions, Statutes, and Rules:**

U.S. Const. amend. VIII .................................................................... 5

28 U.S.C.:
§ 1292 .................................................................................. 8, 17
§ 2244 ........................................................................................ 6
§ 2244(b)(2) ....................................................................... *passim*
§ 2244(b)(3) ........................................................... 3, 7, 8, 16
§ 2244(b)(4) ............................................................................. 8
§ 2255(h) ................................................................................. 10

Fed. R. App. P. 40 ........................................................................... 2

## Introduction and Rule 40(b) Statement

The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) preserves comity and finality by carefully circumscribing federal-court review of state criminal convictions. One important limitation is that a federal habeas petitioner may present a claim in "a second or successive habeas corpus application" only in narrow circumstances, including if "the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2244(b)(2); *see Rivers v. Guerrero*, 605 U.S. 443, 450 (2025).

The Supreme Court's decision in *Atkins v. Virginia*, 536 U.S. 304 (2002), came years before Petitioner Dexter Johnson murdered Maria Aparece in 2006 and long before his capital-murder conviction became final in 2010. Nonetheless, this Court stayed Johnson's August 2019 execution and authorized him to file a successive habeas petition on the basis that his *Atkins* claim relied on "a new rule of constitutional law . . . that was previously unavailable." *In re Johnson*, 935 F.3d 284, 287 (5th Cir. 2019). The Director could not seek rehearing or certiorari regarding that decision. 28 U.S.C §2244(b)(3)(E).

Three years later, the district court denied the Director's motion to dismiss, applying what the court recognized as this Court's "judicially created exception" to AEDPA's limits on successive petitions. ROA.1052 & n.10. Recognizing a substantial ground for difference of opinion (including the Eleventh Circuit's rejection of this Court's rule), the district court certified the order for interlocutory appeal. ROA.1123.

The panel affirmed, adhering to its previous conclusion that an *Atkins* claim was "previously unavailable" to Johnson within the meaning of § 2244(b)(2) at the time he filed his first federal habeas petition. App. 5–6.

Rehearing en banc is warranted. The panel's decision conflicts with the plain text of AEDPA, as well as numerous decisions from the Supreme Court and this Court, and it places this Court on the wrong side of a circuit split (with the Ninth Circuit and against the Eleventh Circuit).

*First*, treating *Atkins* as a "new rule of constitutional law" conflicts with decisions of the Supreme Court and this Court. Fed. R. App. P. 40(b)(2)(B). Whether a claim relies on a "new rule" turns on the "precedent existing at the time the defendant's conviction became final." *Chaidez v. United States*, 568 U.S. 342, 347 (2013) (citation omitted). And because *Atkins* was established before Johnson's "conviction became final," it is not a "new rule." *United States v. Vargas-Soto*, 35 F.4th 979, 988 (5th Cir. 2022). The panel did not grapple with this antecedent issue.

*Second*, the panel's holding—that a determination whether a rule was "previously available" is a "pragmatic test" dependent on the claim's merit—warrants review because it answers a question of exceptional importance in a way that conflicts with a decision of one of this Court's sister circuits. Fed. R. App. P. 40(b)(2)(C), (D). As the district court recognized, this Court has "read a *futility* exception into section 2244(b)(2)(A)." ROA.1052. The Eleventh Circuit explained the error in this Court's holding, which conflates the circumstances in which a new *rule* permits a successive petition with the circumstances in which new *evidence* permits a successive petition. *In re Bowles*, 935 F.3d 1210, 1215–20 (11th Cir. 2019).

The consequences of these errors are significant. Johnson was scheduled for execution in August 2019, until this Court erroneously authorized the filing of a successive petition and stayed his execution. Not only has the State been forced to devote resources to costly and time-consuming proceedings in the district court, including an evidentiary hearing regarding whether Johnson's claim was potentially meritorious at the time of his first habeas petition, but Johnson's victims and their families—and the people of Texas generally—must live with ongoing uncertainty about his sentence.

The Director would not ordinarily seek rehearing en banc from an unpublished opinion, but because he cannot seek rehearing or certiorari review of orders authorizing successive petitions, 28 U.S.C. § 2244(b)(3)(E), rehearing en banc may be the only way to correct the erroneous interpretation of § 2244(b)(2).

## Issues Meriting En Banc Consideration

**1.** Whether a case decided by the Supreme Court long before a petitioner's conviction became final on direct appeal can constitute a "new rule of constitutional law" for purposes of filing a second or successive habeas petition.

**2.** Whether a "new rule of constitutional law . . . was previously unavailable" to a petitioner who could have included a claim based on that rule in a previous habeas petition but did not do so because he believed that courts would find his evidence unpersuasive.

## Statement of the Case

Nearly twenty years ago, in June 2006, Petitioner Dexter Johnson kidnapped, raped, and murdered Maria Aparece. This murder "was only one episode in [Johnson's] escalating pattern of lawlessness," including "numerous aggravated robberies" (one committed the day after the murder) and "three additional killings during the same time period." *Johnson v. Stephens*, No. CIV.A. H-11-2466, 2013 WL 4482865, at *3 (S.D. Tex. Aug. 19, 2013). He was convicted of capital murder in June 2007 and sentenced to death. *See Johnson v. State*, No. AP-75,749, 2010 WL 359018, at *1 (Tex. Crim. App. Jan. 27, 2010) (affirming the conviction on direct appeal). The people of Texas still await justice.

Years before Johnson committed his crimes, the Supreme Court decided *Atkins v. Virginia*, 536 U.S. 304 (2002), holding that the Eighth Amendment prohibits execution of the intellectually disabled. Yet Johnson did not raise an *Atkins* claim in his unsuccessful state application for a writ of habeas corpus. *Ex parte Johnson*, No. WR-73,600-01, 2010 WL 2617804 (Tex. Crim. App. June 30, 2010) (per curiam) (denying relief). Johnson also did not include an *Atkins* claim in his first federal petition for a writ of habeas corpus. Johnson instead argued that he "is 'borderline [intellectually disabled]'" and urged that the principles of *Atkins* should be extended to the mentally ill. *Johnson v. Stephens*, 617 F. App'x 293, 303 (5th Cir. 2015) (per curiam). This Court rejected the argument, holding that "reasonable jurists could not debate that the district court was correct in rejecting Johnson's argument that mental illness should prohibit his execution." *Id.* at 304.

Johnson's execution date was first set for May 2, 2019. ROA.470. Weeks before his scheduled execution, Johnson filed a state habeas corpus application asserting an *Atkins* claim. The Court of Criminal Appeals dismissed the application as an abuse of the writ. *Ex parte Johnson*, No. WR-73,600-02, 2019 WL 1915204 (Tex. Crim. App. Apr. 29, 2019) (per curiam). Johnson was again scheduled to be executed on August 15, 2019. ROA.472.

### This Court authorizes Johnson to file a successive habeas petition and stays his execution.

One week before his execution, on August 8, 2019, Johnson moved this Court for an order under 28 U.S.C. § 2244 authorizing the district court to consider a successive petition for a writ of habeas corpus. *Johnson*, 935 F.3d at 288.

Johnson's motion relied on *In re Cathey*, 857 F.3d 221 (5th Cir. 2017) (per curiam). In that case, decided two years earlier, a motions panel authorized the filing of a successive habeas petition based on a novel (and erroneous) interpretation of the statutory phrase "previously unavailable" in § 2244. *Id.* at 227–34.

Unlike Johnson, Eric Cathey's capital murder conviction became final before *Atkins* was decided. *Cathey v. State*, 992 S.W.2d 460, 461 (Tex. Crim. App. 1999). The only issue this Court considered in *Cathey* was whether *Atkins* was "previously unavailable" for Cathey's first federal habeas application in April 2004. This Court held that his claim fell into a "gray area of previous unavailability despite technical availability." *Cathey*, 857 F.3d at 230. The Court determined that, when Cathey filed his first federal habeas petition, courts were unlikely to have credited his evidence of intellectual disability. *Id.* at 231. Thus, the motions panel reasoned, an *Atkins* claim

was "previously unavailable" to Cathey because "a claim must have some possibility of merit to be considered available." *Id.* at 232. AEDPA barred the State from seeking rehearing or petitioning for certiorari regarding this authorization. 28 U.S.C. § 2244(b)(3)(E). Eight years later, Cathey's petition remains pending. *Cathey v. Guerrero*, No. 4:15-CV-2883 (S.D. Tex.).

In this case, the motions panel followed *Cathey* in staying Johnson's execution and authorizing him to file a successive petition. With respect to whether *Atkins* was a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court," the panel overlooked the crucial differences between the dates of finality of Cathey's and Johnson's convictions and erroneously assumed that *Cathey* decided the issue *sub silentio. See In re Johnson*, 935 F.3d 284, 293 (5th Cir. 2019) ("We accept here that the conclusions in *Cathey* necessarily decided that latter point as well and move on.").

With respect to "previous unavailability," the panel held that *Cathey* "*precedentially determined* that it is correct to equate legal availability with changes in the standards for psychiatric evaluation of the key intellectual disability factual issues raised by *Atkins*." *Id.* at 294 (emphasis added). As a result, this Court granted the motion for authorization and stayed Johnson's execution. AEDPA again prevented the State from seeking rehearing or petitioning for certiorari regarding this authorization order. 28 U.S.C. § 2244(b)(3)(E).

*The district court denies the Director's motion to dismiss but certifies the order for interlocutory appeal, and a panel of this Court affirms.*

This Court's authorization reflects only a preliminary determination that a petitioner has made a prima facie showing that he can meet AEDPA's prerequisites for a successive petition. 28 U.S.C. § 2244(b)(3)(C). The district court must still determine whether those standards are satisfied. *Id.* § 2244(b)(4).

In the district court, the Director moved to dismiss Johnson's petition on the ground that Johnson could not satisfy the standards of § 2244(b)(2). ROA.370–419. Following an evidentiary hearing, in October 2022, the district court denied the motion. ROA.1070. The court recognized that this Court "has read a *futility* exception into section 2244(b)(2)(A)" and applied this "judicially created exception" to AEDPA in allowing the successive petition. ROA.1052 & n.10.

At the Director's request, the district court certified its order for interlocutory appeal. 28 U.S.C. § 1292(b); ROA.1121–23. The court explained that there is substantial ground for difference of opinion regarding the correctness of this Court's "judicially created exception" to AEDPA. ROA.1081–83. And it is a controlling question of law, the resolution of which may materially advance the ultimate termination of the litigation. ROA.1080–81.

This Court accepted the interlocutory appeal. The same panel that issued the authorization order—Judges Southwick, Graves, and Higginson—affirmed the district court's order. App. 1, 6. Again, the panel did not address how *Atkins* could constitute a "new rule" when it was decided before Johnson's conviction became final (indeed, before Johnson committed the murder).

As to "previously unavailable," the panel "affirm[ed] [the] interpretation of 'previously unavailable' in *Cathey* as the correct interpretation." App. 5. That is: "A claim is not automatically considered previously available simply because it was technically available when a prior habeas application was filed" but instead "'must have some possibility of merit to be considered available.'" *Id.* at 5–6 (quoting *Cathey*, 857 F.3d at 232).

Now that the issue been addressed in a procedural posture that permits rehearing and certiorari, the Director respectfully petitions for rehearing en banc.

AEPDA imposes three prerequisites before a petitioner may file a second or successive habeas petition based on new legal standards.

> First, the rule on which the claim relies must be a "new rule" of constitutional law;

> [S]econd, the rule must have been "made retroactive to cases on collateral review by the Supreme Court"; and

> [T]hird, the claim must have been "previously unavailable."

*Tyler v. Cain*, 533 U.S. 656, 662 (2001). This request for rehearing primarily concerns the first and third of these requirements, which independently foreclose Johnson's successive petition.

## I. The Panel's Treatment of *Atkins* as a "New Rule" Conflicts with Decisions of the Supreme Court and this Court.

Because *Atkins* was decided eight years before Johnson's conviction became final on direct appeal, it does not constitute a "new rule of constitutional law" that could allow him to file a successive petition under § 2244(b)(2)(A).

"A new rule is one that was not established until after the petitioner's conviction became final on direct appeal." *Cockerham v. Cain*, 283 F.3d 657, 660 (5th Cir. 2002) (citing *Williams v. Cain*, 229 F.3d 468, 475 n.6 (5th Cir. 2000)). The question is whether the rule "was dictated by precedent existing at the time the defendant's conviction became final." *Vargas-Soto*, 35 F.4th at 988 (addressing 28 U.S.C. § 2255(h)(2); quoting *Edwards v. Vannoy*, 593 U.S. 255, 265 (2021)). If a "rule was already apparent to all reasonable jurists" at the time the conviction became final, it is not a "new rule." *Edwards*, 593 U.S. at 265.

The ultimate source of this language is the Supreme Court's plurality opinion in *Teague v. Lane*: "[A] case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government." 489 U.S. 288, 301 (1989) (plurality op.). "To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.*; *accord Chaidez*, 568 U.S. at 347 (same).

Applying this principle to these facts is straightforward. The "new rule of constitutional law" relied upon by Johnson is the Supreme Court's decision in *Atkins*. *See* ROA.46 (Johnson asserting that his "*Atkins* claim meets this requirement"). But *Atkins* was decided four years before Johnson committed his crimes in 2006 and eight years before his conviction became final in 2010. At the time Johnson's conviction became final, the rule of *Atkins* was dictated by precedent. Looking at "precedent existing at the time [Johnson's] conviction became final," *Atkins* does not constitute a "new rule." *See In re Halprin*, 788 F. App'x 941, 944 (5th Cir. 2019) (per curiam) ("Halprin's claim does not rely on a new rule of constitutional law; instead, he relies on a rule that is nearly a century old. . . . *Tumey* is not a 'new rule' within the meaning of § 2244(b)(2)(A).").

The Director raised this argument to the panel. *See* Appellant's Br. 21 ("It cannot be credibly argued that, by the time Johnson filed his initial petition, *Atkins* was 'new.'"); *see also* ECF No. 47 ("*Atkins*, already apparent to all reasonable jurists' before Johnson's conviction became final, was not new."). Neither the panel nor Johnson has ever offered any reasoned analysis supporting a contrary conclusion. In its authorization decision, the panel appears to treat the "new rule" requirement

as resolved *sub silentio* in *Cathey*, failing to recognize that *Atkins* was decided after Cathey's conviction became final. *See Johnson*, 935 F.3d at 293 ("We accept here that the conclusions in *Cathey* necessarily decided that latter point as well and move on."). And the panel opinion on the certified question addresses only "previously unavailable," not the "new rule" requirement. App. 1–6.

Johnson has, at times, conflated the "previously unavailable" requirement with the "new rule of constitutional law" requirement, implying that any previously unavailable claim necessarily relies on a new rule of constitutional law. Appellee's Br. 44 ("[C]onsideration of an 'extra-judicial source' such as the DSM-5 is relevant only to whether, in this context, an *Atkins* claim that previously had no possibility of merit now has 'some possibility of merit.' Thus, nothing in *Cathey* or *Johnson* reads the words 'new rule of constitutional law' out of the statute."). At other times, Johnson has suggested that if a rule is "new" for any petitioner, then it is "new" for every petitioner. *See* ROA.46 ("The Fifth Circuit has repeatedly held that an *Atkins* claim meets this requirement [of being a new rule of constitutional law].").

But this Court and the Supreme Court have repeatedly held that the existence of a "new rule" depends on the precedent at the time of a particular defendant's conviction. *See supra* at 10–11. Any other reading would render the phrase "new rule" surplusage. After all, any rule of constitutional law is, necessarily, a "new rule" at some point in time. But the phrase has meaning only if it refers to a "new rule" with respect to a particular habeas petitioner. In this case, because *Atkins* was not a "new rule" adopted after Johnson's conviction became final, he cannot rely on it in a successive petition. 28 U.S.C. § 2244(b)(2)(A).

## II. The Panel's Interpretation of "Previously Unavailable" Entrenches a Circuit Split and Presents a Question of Exceptional Importance.

This Court, joined by the Ninth Circuit, erroneously holds that whether a rule of constitutional law was "previously unavailable" is a "practica[l]" inquiry, *Cathey*, 857 F.3d at 227, dependent on whether the claim had a "possibility of merit." *Id.* at 232; *see also Munoz v. United States*, 28 F.4th 973, 977 (9th Cir. 2022) (adopting "a pragmatic approach to determining whether a claim based on a new constitutional rule was 'previously unavailable'"); *see also id.* at 979 (citing *Cathey* for the proposition that "whether a legal claim or remedy *can* be utilized or accessed by a prisoner" depends on "whether the prisoner had a factual basis for a claim based on the new law and when the prisoner learned of the factual basis"). The district court described this Court as "read[ing] a *futility* exception into section 2244(b)(2)(A)" — a "judicially created exception" to AEDPA's limits on successive petitions. ROA.1052 & n.10.

The Eleventh Circuit has correctly rejected this Court's *Cathey* rule, holding that a rule's previous unavailability does not depend on "whether the claim would have been a winning one at the time of the first petition, but on whether it would have been feasible for the petitioner to bring the claim then." *Bowles*, 935 F.3d at 1219. This Court should adopt the Eleventh Circuit's interpretation.

Johnson contends—and the panel agreed—that *Atkins* was "unavailable" at the time of his first habeas petition because, at that time, courts would not have credited his evidence of intellectual disability. *See* Appellee's Br. 1 (arguing that Johnson became able to prove his *Atkins* claim "with the publication of the DSM-5");

*Johnson*, 935 F.3d at 293 ("The new diagnostic guidelines included significant changes in the diagnosis of intellectual disability, which changed the focus from specific IQ scores to clinical judgment. The DSM-5 recognizes that an individual with an IQ score over 70 may still qualify as intellectually disabled."). In other words, Johnson contends that he has new *evidence* of intellectual disability.

By treating Johnson's earlier lack of evidence as making *Atkins* "previously unavailable," the panel erroneously conflated the different tests for filing a successive petition. *Compare* 28 U.S.C. § 2244(b)(2)(A) (new legal predicate), *with id.* § 2244(b)(2)(B) (new factual predicate). A claim based on a new "factual predicate"—such as new evidence of intellectual disability—may be presented in a successive petition only if, among other requirements, "no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2244(b)(2)(B). But the DSM-5 has no bearing on whether Johnson was "guilty of the underlying offense," and allowing a successive petition based on new evidence unrelated to Johnson's guilt violates AEDPA's plain text.

The Eleventh Circuit's *Bowles* decision details the errors in this Court's approach: "Congress knew how to provide for second and successive petitions based on factual developments, such as the publication of a new DSM manual," 935 F.3d at 1218, and chose to limit successive petitions to circumstances where the new factual predicate concerned whether the petitioner was guilty of the underlying offense. *Id.* "That a claim has become meritorious for some [reason other than adoption of a new rule of constitutional law by the Supreme Court] has no bearing on whether the claim was 'previously unavailable' for § 2244(b)(2)(A) purposes."

*Id.* "[O]ur feasibility analysis does not focus on whether the claim would have been a winning one at the time of the first petition, but on whether it would have been feasible for the petitioner to bring the claim then." *Id.* at 1219.

In a different authorization decision, this Court suggested that *Cathey* and *Johnson* "involved changes in diagnostic standards for intellectual disabilities, which then altered the legal standards for granting relief on *Atkins* intellectual disability claims." *Halprin*, 788 F. App'x at 944. But this characterization cannot harmonize the decisions with § 2244(b)(2): To the extent that Johnson's claim relies on "altered legal standards," a successive petition would be authorized only if those alterations were "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court." But Johnson admits that the only "new rule" he relies on is *Atkins* itself. ROA.46.

Under AEDPA's plain text, because it was feasible for Johnson to assert an *Atkins* claim at the time of his first habeas petition (even if his evidence of intellectual disability was unpersuasive), *Atkins* was not "previously unavailable." New evidence of intellectual disability cannot permit the filing of a successive petition because it has no bearing on Johnson's "guil[t] of the underlying offense." *See* 28 U.S.C. § 2244(b)(2)(B)(ii).

## III. These Issues Warrant Rehearing En Banc.

"Federal habeas review of state convictions . . . intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority." *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (citations omitted). This Court's relaxation of

AEDPA's strict limits on successive habeas petitions intrudes on the State's sovereignty and significantly undermines comity and finality.

This case, alone, demonstrates significant harm to the State. Johnson committed a brutal rape and murder in 2006. He would have been executed in August 2019 but for this Court's erroneous authorization of a successive petition, which has led to six years of delay with no end in sight. These proceedings have and will come at significant cost to the State. *See* ROA.1094 & n.5 (estimating that an evidentiary hearing on the merits sought by Johnson "would likely take more than a week, would likely cost each party at least $150,000 in expert witness fees, and would require multiple attorneys devoting easily over 1,000 attorney hours in hearing preparation alone").

Eric Cathey committed his capital murder in 1995. This Court erroneously authorized him to file a successive petition in 2017, and eight years later, that petition remains pending in district court. Standing alone, the importance of the errors in undermining the finality of these convictions warrants rehearing en banc.

And although this Court has authorized only Cathey and Johnson to file successive petitions under its futility exception, other habeas petitioners have invoked this precedent in seeking authorization for their own successive petitions and to forestall execution of their sentences. *See, e.g.*, *Halprin*, 788 F. App'x at 944; *In re Sparks*, 939 F.3d 630, 633 (5th Cir. 2019). Not only do these filings result in an ongoing drain on this Court's resources, but in the event that a panel erroneously authorizes another successive petition, the State lacks any remedy on rehearing or certiorari. *See* 28 U.S.C. § 2244(b)(3)(E).

This procedural posture—a certified interlocutory appeal under § 1292(b)—provides this Court with its first opportunity to consider the issue en banc, overrule *Cathey* and *Johnson*, and reaffirm its commitment to AEDPA's plain text.

## Conclusion

For these reasons, this Court should grant the petition for rehearing en banc.

Respectfully submitted.

/s/ William R. Peterson

Ken Paxton
Attorney General of Texas

William R. Peterson
Solicitor General
William.Peterson@oag.texas.gov

Brent Webster
First Assistant Attorney General

William F. Cole
Principal Deputy Solicitor General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Cameron Fraser
Assistant Solicitor General

Gwendolyn S. Vindell
Assistant Attorney General

*Counsel for Respondent-Appellant*

## Certificate of Service

On September 5, 2025, this document was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ William R. Peterson

William R. Peterson

## Certificate of Compliance

This petition complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 40(d)(3)(A) because it contains 3,877 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ William R. Peterson

William R. Peterson

# APPENDIX

# United States Court of Appeals
# for the Fifth Circuit

———————

No. 23-70002

———————

United States Court of Appeals
Fifth Circuit

**FILED**

July 23, 2025

Lyle W. Cayce
Clerk

DEXTER JOHNSON,

*Petitioner—Appellee,*

*versus*

ERIC GUERRERO, *Director, Texas Department of Criminal Justice, Correctional Institutions Division,*

*Respondent—Appellant.*

———————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-3047

———————————————————

Before SOUTHWICK, GRAVES, and HIGGINSON, *Circuit Judges.*

PER CURIAM:[*]

    We authorized a prisoner's petition to file a second or successive application for a writ of habeas corpus. The district court determined the prisoner met the statutory requirements for a successive application and denied the State's motion to dismiss. The district court then granted the

———————————

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 23-70002

State's motion to certify a question for interlocutory appeal. We answer the question and AFFIRM.

## FACTUAL AND PROCEDURAL HISTORY

Dexter Johnson was convicted and sentenced to death for the 2006 robbery, kidnapping, and murder of 23-year-old Maria Aparece. The details of his offense are recounted in *Johnson v. Stephens*, 617 F. App'x 293 (5th Cir. 2015). The procedural history of Johnson's state habeas claims and his initial federal habeas proceedings are recounted in our decision that authorized Johnson to file a second or successive federal habeas application under 28 § U.S.C. 2244(b)(2)(A). *In re Johnson,* 935 F.3d 284, 287–88 (5th Cir. 2019).

Johnson filed his second or successive habeas application in the United States District Court for the Southern District of Texas. The application contained a single claim based on *Atkins v. Virginia*, 536 U.S. 304 (2002). The State moved to dismiss the petition as impermissibly successive and untimely. The district court denied the State's motion to dismiss and held an evidentiary hearing. After the hearing, the State renewed its motion to dismiss and urged the district court to answer "whether an *Atkins* claim was functionally unavailable to Johnson during the pendency of his initial federal habeas proceedings." The district court denied the State's motion because it determined Johnson properly demonstrated his *Atkins* claim was previously unavailable and his claim was timely under the equitable tolling doctrine.

The State moved to certify the district court's order for interlocutory appeal under 28 U.S.C. § 1292(b). The State sought to certify the following issues for appeal: (1) "[w]hether there can be judicially created exceptions to 28 U.S.C. § 2244(b)(2)(A)"; (2) "[w]hether an attorney's intentional, strategic decisions to not raise a claim he deemed meritless can ever

constitute extraordinary circumstances"; and (3) "[w]hether a *prima facie* showing of intellectual disability exempts a petitioner from the diligence requirement of equitable tolling." The district court certified only the first issue.

## STANDARD OF REVIEW

We review certified orders *de novo*. *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 397 (5th Cir. 2010). "Under § 1292(b), it is the order, not the question, that is appealable." *Id.* at 398. Though we are not limited to considering only the certified issue, we are limited "to reviewing 'questions that are material to the lower court's certified order.'" *Id.* at 398 (quoting *Adkinson v. Int'l Harvester Co.*, 975 F.2d 208, 211 n.4 (5th Cir. 1992)). Although this court is permitted to consider each question raised by the State, we will only address the question certified by the district court: "Whether there can be judicially created exceptions to 28 U.S.C. § 2244(b)(2)(A)?"

## DISCUSSION

Federal law generally prohibits second or successive applications for a writ of habeas corpus. 28 U.S.C. § 2244. To file a second or successive application, the applicant must obtain authorization from the appropriate court of appeals. § 2244(b)(3)(A). Claims that were "presented in a prior application [will] be dismissed." § 2244(b)(1). Claims that were "not presented in a prior application [will also] be dismissed," except in narrow circumstances. § 2244(b)(2). Relevant here, the application may proceed if "the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." § 2244(b)(2)(A).

In his motion for authorization to file a successive application, "Johnson argue[d] that *Atkins* is a new rule of constitutional law that is

retroactive and that his claim was previously unavailable because the latest professional diagnostic manual changed the framework for intellectual disability." *In re Johnson*, 935 F.3d at 291–92. In *Atkins v. Virginia*, the Supreme Court held that executions of the mentally disabled violate the Eighth Amendment. 536 U.S. at 321. Notably, "*Atkins* was decided long before Johnson even committed his crimes." *Johnson*, 935 F.3d at 292. Nevertheless, we agreed with Johnson that *Atkins* should be applied retroactively to his case, "counterintuitively perhaps, but not unreasonably, with the full weight of our conclusion being borne by this court's recent decision in *In re Cathey*, 857 F.3d 221 (5th Cir. 2017)." *Id.*

Cathey, like Johnson, filed his first habeas petition without an *Atkins* claim although *Atkins* had already been decided. *Cathey*, 857 F.3d at 227. Cathey argued that an *Atkins* claim was nonetheless previously unavailable to him because it was "practically unavailable" until courts recognized a phenomenon called the Flynn Effect and he obtained evidence from the State suggesting his true score was lower than he initially believed.[1] *Id.* at 227–28. At the time of his first application, Cathey believed his IQ score was 77, which was not within the *Atkins* range at the time. *Id.* at 227. Later, it came to light that his score was more likely 73, which was within the *Atkins* range. *Id.* In his motion for authorization to file a second or successive application, he argued that "he did not know about the problem of aging norms nor the State's evidence of a lower IQ score, and thus had no reason to pursue an *Atkins* claim that nobody else had won and only one person had even tried."

---

[1] "The Flynn Effect 'is a phenomenon positing that, over time, standardized IQ test scores tend to increase with the age of the test without a corresponding increase in actual intelligence in the general population. Those who follow the Flynn [E]ffect adjust for it by deducting from the IQ score a specified amount for each year since the test was normalized.'" *In re Cathey*, 857 F.3d at 227 (quoting *Wiley v. Epps*, 625 F.3d 199, 203 n.1 (5th Cir. 2010), *as revised* (Nov. 17, 2010)).

No. 23-70002

*Id.* at 228 (quotation marks omitted).  We determined that "a claim must have some possibility of merit to be considered available" and that Cathey had made a *prima facie* showing that his *Atkins* claim was previously unavailable to him. *Id.* at 232–234.

With that background in mind, we now turn to the certified question: "Whether there can be judicially created exceptions to 28 U.S.C. § 2244(b)(2)(A)?"  The answer is no.  Section 2244(b)(2) is jurisdictional in nature. *See Panetti v. Quarterman*, 551 U.S. 930, 942, 947 (2007).  Courts have "no authority to create equitable exceptions to jurisdictional requirements." *Bowles v. Russell*, 551 U.S. 205, 214 (2007).

According to the State, we have gone beyond proper statutory interpretation and created such an exception.  The district court also characterized our holding in *Cathey* as "read[ing] a futility exception into [S]ection 2244(b)(2)(A)."  Despite the label given by the State and the district court, this court did not create any exceptions to the requirements of Section 2244(b)(2)(A) in *Cathey*.  Instead, we interpreted the phrase "previously unavailable" in light of our precedents that allowed for "a gray area of previous unavailability despite technical availability." *Cathey*, 857 F.3d at 230.  It is appropriate for courts to interpret statutes, even jurisdictional statutes like Section 2244(b)(2)(A). *See Tyler v. Cain*, 533 U.S. 656, 662–63 (2001) (interpreting "made" to mean "held" for purposes of Section 2244(b)(2)(A)).

Therefore, we understand the parties' question more accurately to be this: Whether "previously unavailable" can be read in the way *Cathey* instructs, requiring the claim have had "some possibility of merit" for it to be considered previously available for purposes of Section 2244(b)(2)(A)? In answer to that question, we affirm our interpretation of "previously unavailable" in *Cathey* as the correct interpretation.  A claim is not

No. 23-70002

automatically considered previously available simply because it was technically available when a prior habeas application was filed. Instead, "a claim must have some possibility of merit to be considered available." *Cathey*, 857 F.3d at 232.

AFFIRMED.